### K. C. OIL CO. v. HARVEST OIL & GAS CO.

No. 10059—Opinion Filed Dec. 14, 1920.

(Syllabus by the Court.)

1. **Mechanics' Liens—Enforcement of Materialman's Lien—Receivers—Directing Verdict.**

In an action on account to recover the purchase price of a quantity of crude oil, to fore-

close a materialman's lien, and for the appointment of a receiver, commenced by a corporation against R., an individual, and the H. O. & G. Company and the R. & C. Company, two corporations, the plaintiff introduced evidence tending to show that R., the individual defendant, who was an officer and stockholder in both of his codefendant corporations, purchased the crude oil and was in possession of the property upon which the lien was claimed and for which the receiver was granted. Thereupon the individual defendant testified without contradiction that he purchased the oil as an officer of one of the defendant companies and for its use and that the same was charged to that company upon the books of the plaintiff; that the property upon which the lien was sought to be foreclosed and for which the receivership was granted was the property of the H. O. & G. Company and that the same was in the possession of the R. & C. Company as lessee. Held, that, in the absence of fraud, the evidence introduced by the plaintiff in no way tended to contradict the positive testimony of R., and that the trial court did not err in so instructing the jury.

**2.   Receivers — Wrongful Receivership—Action for Damages—Burden of Proof.**

Persons who wrongfully procure the appointment of a receiver, become, after the appointment is judicially declared void, trespassers ab initio, and liable for the damages caused by their wrongful acts. It is not necessary, in order to recover damages for wrongfully procuring the appointment of a receiver, to show that the appointment was procured maliciously, and without probable cause. In an action for damages for wrongfully securing the appointment of a receiver, the general rules as to burden of proof and admissibility of evidence in civil actions apply. Plaintiff is entitled to all damages which he may sustain by reason of such appointment, and in determining the measure of damages it is proper to consider the injury to plaintiff's possession during the period of the receivership.

**3.   Same—Mitigation of Damages.**

Where a person takes the property of another under circumstances amounting to a conversion, the wrongdoer cannot, with good grace, ask the person injured to do anything more in the way of mitigating damages than to take back his property when it is tendered to him. It is true that there can be no recovery for losses which might have been prevented by reasonable efforts on the part of the person injured, but it seems to us that the defendant has done everything that could be reasonably expected of him in the way of mitigating damages.

**4.   Same—Amount of Recovery—Instructions —Harmless Error.**

Record examined, and held: (1) That the trial court did not err in instructing the jury as to the measure of damages. (2) That the amount of recovery, while liberal, was fully sustained by the evidence.. (3) That the remaining errors complained of are of the

class covered by section 6005, Rev. Laws 1910, and as it does not appear that they probably resulted in a miscarriage of justice, it follows that the judgment below must be affirmed.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by the K. C. Oil Company against the Harvest Oil & Gas Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Robert Wimbish and W. C. Duncan, for plaintiff in error.

Pierce & McClelland, for defendant in error.

KANE, J. This was an action upon an account and to foreclose a materialman's lien, commenced by the plaintiff in error, plaintiff below, against the defendant in error and others, as defendants.

The petition of the plaintiff alleged in substance that the R. & C. Oil Company, the Harvest Oil & Gas Company, and C. G. Reeves were indebted to it in the sum of $85.25 for 155 barrels of crude oil which the plaintiff sold to the defendants and for which the defendants refused to pay; that said oil was furnished to said defendants for the purpose of operating the engine and machinery in drilling an oil well on an oil and gas lease belonging to the defendants; that the defendants had on said lease certain tools, oil well supplies, etc., which were specifically described in the petition, upon which the plaintiff was entitled to a lien for the payment of the amount sued for. Wherefore plaintiff prays judgment against the R. & C. Oil Company, Harvest Oil & Gas Company, and C. G. Reeves in the sum of $85.25, and for a decree adjudging the oil well supplies and other materials hereinbefore mentioned to be subject to a lien in favor of plaintiff to the extent of the judgment rendered and for the foreclosure of said lien against said oil well supplies, materials, etc., and the oil and gas lease belonging to the defendants. The plaintiff further prayed for an order restraining the defendants from collecting the insurance on said oil well supplies and that a receiver be appointed to take charge of the oil well supplies, materials, etc., and that said defendants be restrained and enjoined from selling, disposing of, removing, or otherwise incumbering said oil well supplies, materials, etc.

Upon this petition and other showings made by the plaintiff, the judge of the district court made an order allowing a temporary injunction and appointing a receiver, and thereafter the receiver thus appointed qualified and proceeded to take charge of the property hereinbefore mentioned.

Thereafter the defendant Harvest Oil & Gas Company filed its amended answer, wherein, in addition to a general denial, it alleged in substance that it was the owner of the oil well supplies, material, etc., described in plaintiff's petition, and that this answering defendant rented the same to the defendant R. & C. Oil Company for the purpose of drilling an oil and gas well upon a lease owned by the latter company. In this answer the defendant also specifically denied that it ever bought anything from the plaintiff, that it was in any way indebted to the plaintiff, and that plaintiff was entitled to a lien on any of the property described in said petition.

By way of cross-petition this answering defendant alleged in substance that it was the owner of all the oil well supplies, machinery, etc., mentioned in plaintiff's petition and over which a receiver was appointed; that said oil well supplies, materials, etc., were rented by it to the defendant R. & C. Oil Company to drill a well in the Allen field, and that this defendant never bought anything from the plaintiff and was not indebted to plaintiff in any way, and that said tools and machinery were in no way liable to any lien which plaintiff might have against any other defendant herein; that the officers of plaintiff corporation, or those in charge of its business, were also officers of and interested in a refining company with a plant at Allen, Oklahoma; that the officers of plaintiff, well knowing that this defendant owed them nothing and well knowing that they had no legal right to have a receiver appointed over the property of this defendant, instituted this action against this defendant and made application to this court for a receiver to be appointed to take charge of the property of this defendant and procured the appointment of such receiver, without notice to this defendant, for the sole and only purpose of using the property of this defendant in enterprises in which the managing officers of plaintiff were interested; that after the procuring of the appointment of such receiver, which was done illegally and without any grounds, over property worth from two to three thousand dollars, when the debt claimed was only about $80, said plaintiff, through its managing officers, who had absolute control over said receiver, caused him to lease a boiler belonging to this defendant for a nominal sum so that it might be used without expense by said refining company in which the officers of plaintiff were interested, the actual rental value of which said boiler was at least $5 per day, said boiler being rented by said receiver for the nominal sum of $7.50 per month; that said plaintiff caused said receiver to rent out tools belonging to this defendant for a rental of almost nothing to enterprises in which the managing officers of plaintiff were interested, and, in short, this whole receivership was a scheme and conspiracy entered into by plaintiff, said receiver, and the enterprises in which managing officers of plaintiff were interested to secure the use of the tools and machinery of this defendant for nothing or next to nothing; that plaintiff, by such unwarranted and illegal receivership, has kept this defendant out of the use of its said property from the 30th day of August, 1915, to the 15th day of May, 1916, a period of nine months; that the fair rental value of said property is the sum of $300 per month, which is the sum which the use of said property is reasonably worth, and has thus damaged this defendant in the sum of $2,700. Wherefore he prays judgment, etc.

Thereafter, on the 15th day of May, 1916, an order was made by the trial court ordering the property in the hands of the receiver to be delivered to the Harvest Oil & Gas Company. Thereafter, on the 12th day of October, 1916, the plaintiff filed its reply to the amended answer of defendant, which, after denying each and every allegation in defendant's amended answer contained, specifically denied that it had any control over said receiver; that it in any way joined in the scheme and conspiracy to deprive the defendant of its property; that the proceedings instituted herein were unwarranted and illegal; but declares that the same were more than justified by reason of the fact that the defendants were justly indebted to plaintiff; that they made no effort whatever to pay plaintiff; that according to the best information and belief of plaintiff said defendants left the country, abandoned their personal property, which was taken in charge by this court, through its receiver, and made no provision whatever for the payment of plaintiff's claim; and, furthermore, plaintiff alleges and states that the court saw to it that the defendants, and each of them, were amply protected by the bond of the receiver given in this case. Wherefore the plaintiff prayed that it recover judgment as prayed for in this petition and that the defendant have nothing by its answer and cross-petition.

Up to this time the defendants R. & C. Oil Company and C. G. Reeves had not been served with summons, nor had they made any voluntary appearance; but on the 16th day of October, 1916, summons was duly issued and served upon the remaining defendants, after which defendant C. G. Reeves filed an answer in the nature of a general denial.

Upon the issues thus joined trial was had on the 25th day of November, 1916, which resulted in a judgment in favor of plaintiff and against the defendants C. G. Reeves and Harvest Oil & Gas Company for the sum of $85.-25 debt and $75 attorney's fees and establishing a lien on the property described in plaintiff's petition. Two days thereafter the motion for a new trial filed by the defendants was granted as to the Harvest Oil & Gas Company and overruled as to the defendants C. G. Reeves and R. & C. Oil Company. Thereafter a trial was had between the plaintiff and the defendant Harvest Oil & Gas Company wherein the trial court peremptorily instructed the jury to find for the defendant and against the plaintiff for its debt and lien claim, and submitted instructions to the jury on the question of damages on the cross-petition of the defendant. Upon this trial the jury returned a verdict in favor of the defendant Harvest Oil & Gas Company and against the plaintiff for the sum of $2,000, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

Counsel for plaintiff in error present their grounds for reversal under eight propositions as follows:

(1) The court erred in peremptorily instructing the jury to find against the plaintiff and for the defendant Harvest Oil & Gas Company.

(2) The court erred in instructing the jury that the receivership is wrongful and that the defendant is entitled to damages against the plaintiff.

(3) The measure of damages of the defendant as fixed by the court was not correct.

(4) If the defendant Harvest Oil & Gas Company received and used the oil purchased by C. G. Reeves, then it would be liable to plaintiff for the purchase price.

(5) The party to an action is not responsible for the act or misconduct of the receiver.

(6) Under this proposition will be discussed the failure of the court to give special instruction No. 5 requested by the plaintiff.

(7) The court erred in admitting and excluding testimony in this case.

(8) The court erred in rendering judgment for the defendant against the plaintiff for the amount fixed by the verdict of the jury or any other amount.

. We have examined the record carefully and find little if any conflict in the testimony except on the question of the amount of recovery.

The evidence conclusively shows that the oil well supplies taken by the receiver belonged to defendant Harvest Oil & Gas Company; that the Harvest Oil & Gas Company rented the property to the R. & C. Oil Company for the purpose of drilling an oil and gas well on a lease owned by the latter company, and that it was the latter company that purchased the oil from the plaintiff which furnished the basis of plaintiff's money action.

The point counsel for plaintiff make in their first ground for reversal is that the mere circumstance disclosed by the evidence that C. G. Reeves, who purchased the crude oil from the plaintiff, was an officer and stockholder of both the Harvest Oil & Gas Company and the R. & C. Oil Company, was sufficient to join an issue of fact for the jury on the question whether the oil was purchased for the Harvest Oil & Gas Company, for the R. & C. Oil Company, or for Reeves personally or for all the defendants jointly, in the face of the otherwise undisputed testimony that the crude oil was purchased by Reeves as an officer of R. & C. Oil Company, and that it was charged to that company on the books of the plaintiff. We think this contention is wholly without merit. It is not unusual for one person to own stock in several corporations and to represent different corporations in an official capacity. There was no fraud alleged or proven, and there was no contention that the two corporations were not organized in good faith for legitimate corporate purposes. On the contrary, the undisputed evidence showed that each company operated within the scope of its own corporate sphere independently of the other. In these circumstances, the mere circumstance that Reeves was an officer of both companies in no way tends to contradict the positive evidence that Reeves acted for the R. & C. Company in purchasing the crude oil and that the oil well supplies belonged to the Harvest Oil & Gas Company.

There is some contention that the consideration to be paid by the R. & C. Oil Company to the Harvest Oil & Gas Company for the use of the tools is sufficient within itself to have at least been submitted to the jury as to whether or not the two companies were operating together. In support of this contention, counsel for plaintiff in error say in their brief:

"The contract as testified to by Reeves is that the Harvest was to pay $150 and transportation from Ardmore to Allen for thirty days, and $15 a day additional rental on them, and in case they found oil in paying quantities in that well the Harvest was to have two more wells to drill at a contract price of $2 per foot. The lease proved to be worthless, or almost so. The only assets shown

to have been left were the tools claimed by the Harvest."

In view of what we have just said as to the separate entity of these corporations, we are unable to perceive anything in the contract between them which would in anywise tend to dispute the direct evidence that they were not operating together.

We are also unable to agree with counsel's second proposition, that the court erred in instructing the jury that the receivership was wrongful and that defendant was entitled to damages against the plaintiff. The evidence, as we have seen, showed without contradiction that the crude oil was sold to the R. & C. Oil Company and that the oil well supplies belonged to the Harvest Oil & Gas Company. It also showed that the oil well supplies were worth several fold the amount of the debt sued for. It seems to us that in these circumstances there can be no question that the receivership was wrongful and that the defendant was entitled to damages against the plaintiff. It seems to be conceded by the parties that the general rule as to liability is correctly stated in 34 Cyc. 511, substantially as follows:

Persons who wrongfully procure the appointment of a receiver, become, after the appointment is judicially declared void, trespassers ab initio, and liable for the damages caused by their wrongful acts. It is not necessary, in order to recover damages for wrongfully procuring the appointment of a receiver, to show that the appointment was procured maliciously, and without probable cause. In an action for damages for wrongfully securing the appointment of a receiver, the general rules as to burden of proof and admissibility of evidence in civil actions apply. Plaintiff is entitled to all damages which he may sustain by reason of such appointment, and in determining the measure of damages it is proper to consider the injury to plaintiff's possession during the period of the receivership, the amount of good and collectable accounts lost by reason of the receivership, and the value of the services of counsel employed to procure the vacation of the order appointing the receiver.

Under this rule the proposition of whether or not the property was in the hands of the plaintiff or the receiver or some other person is not material where it is shown that the entire receivership was wrongful. The gist of the action is the damages sustained by the defendant through such wrongful receivership.

The next assignment of error, that the measure of damages of the defendant as fixed by the court was not correct, is the one most seriously contended for by counsel for plaintiff in error. Of this assignment in error they say:

"The judgment in this case is for $2,000.00, which is a large judgment, and indicates that the jury were either misled as to the measure of damages, or else were under the influence of passion or prejudice. The court charged that the measure of damages was the reasonable rental value in the condition the tools were in until they were returned to the defendant. This instruction in our opinion was erroneous and misleading, and is the cause of this big judgment. It was erroneous for the following reasons:

"First. It absolutely ignores the testimony as to the condition in which the tools were left by Mr. Reeves when he left for Texas.

"Second. The charge ignores the question of the tools having at the time a usable value and a market for their use.

"Third. The charge ignores the duty of the defendant to reduce his damages to the minimum as required by law."

Under the first subdivision of this assignment of error it is contended that there was no evidence as to the rental value of the tools and the condition in which they were at the time the receiver took charge of them. We are of the opinion that there was sufficient evidence tending to show the condition of the tools at the time the receiver took them into his possession. Mr. Reeves testified that he saw the tools just before the receiver was appointed and also testified as to the condition of the tools after the R. & C. Oil Company had ceased using them. Mr. Reeves also testified that the fair rental value of the tools in that condition was $15 per day. We think on the whole the instruction complained of was sufficiently comprehensive to advise the jury as to the proper measure of damages.

The receiver was using or had found a market for the tools, or at least a part of them, and it is only fair to charge the person responsible for their taking with their reasonable rental value for the time they were under his charge.

Under the remaining subdivision of this assignment of error counsel contends that the defendant should have mitigated the damages by promptly filing a motion to discharge the receivership, and that, inasmuch as he did not do this until several months after he had notice of the appointment of a receiver, the instruction complained of is erroneous because it did not notice this latter circumstance. We are unable to agree with this contention.

It seems to us that where a person takes the property of another under circumstances

amounting to a conversion, the wrongdoer cannot with good grace ask the person injured to do anything more in the way of mitigating damages than to take back his property when it is tendered to him. It is true that there can be no recovery for losses which might have been prevented by reasonable efforts on the part of the person injured, but it seems to us that the defendant has done everything that could be reasonably expected of him in the way of mitigating damages.

While the verdict of the jury and the judgment rendered thereon seem to be liberal, there can be no doubt that they were amply supported by the evidence. The rule is that the jury shall weigh conflicting evidence. In the case at bar there was no conflict in the evidence on any point except as to the condition of the tools and as to the amount of damages sustained. All of this was submitted to the jury, and they returned a verdict for the defendant for the amount of damages which they found the defendant actually suffered. This amount was not in excess of the lowest estimate given by any of the witnesses as to the rental value of the tools, to wit, $8 per day. The receiver was appointed on August 30, 1915, and the property was not recovered by the defendant until June 21, 1916, the defendant being deprived of its use a total of 293 days. At $8 per day this would amount to $2,344. This being several hundred dollars in excess of the amount of the verdict, it cannot be said that the verdict was excessive or that it was contrary to the evidence.

We have carefully examined the remaining propositions and find that they have been covered by what we have already said, or that they belong to the class of errors covered by section 6005, Rev. Laws 1910, which provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Being satisfied that the errors of this class, if any, have not resulted in a miscarriage of justice, it follows that the judgment of the court below must be affirmed.

RAINEY, C. J., HARRISON, V. C. J., and PITCHFORD, JOHNSON, McNEILL, HIGGINS, BAILEY, and COLLIER, JJ., concur.