## ANDERSON v. MARIETTA NAT. BANK et al.

No. 14276—Opinion Filed Oct. 16, 1923.

Rehearing Denied Nov. 20, 1923.

1. **Mortgages—Foreclosure—Inadequate Security—Recourse to Crops, Rents and Profits.**

A mortgagee of real estate in foreclosing his lien, where the security is inadequate, may include in foreclosure proceedings the crops, rents, and profits, unsevered from the soil, at the time of the foreclosure sale, or at the time the mortgagee is legally possessed of the premises.

2. **Same.**

But the mortgagee can only avail himself of the right where the real estate security is inadequate.

2. **Same—Priority Over Chattel Mortgage on Crops.**

Where there is a conflict of interest between lien claimants, such as may arise between the mortgagee's where the mortgagor gives a real estate mortgage, and subsequently gives a chattel mortgage on crops growing upon the mortgaged premises, their rights should be determined and adjudicated in accordance with the provisions of section 7418, Compiled Statutes 1921.

3. **Same—Rights of Mortgagor.**

The mortgagor, under a real estate mortgage, where same does not expressly include

and cover the crops, rents, and profits, has absolute control and dominion over all crops, rents, and profits of the land, intermediate the giving of the mortgage and the foreclosure of same, and may sell or mortgage same subject to the rights of the real estate mortgagee.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Love County; B. C. Logsdon, Judge.

Action by American Investment Company against C. L. Anderson and others; First National Bank of Marietta intervening. From the judgment, C. L. Anderson brings error. Affirmed.

Potterf & Gray, for plaintiff in error.

Keller & Cameron, for defendant in error.

Opinion by JONES, C. This suit was instituted in the district court of Love county, Okla., on the 2nd day of June, 1922, by the American Investment Company against Daniel Skeans and wife, S. F. Stansbury and wife, C. L. Anderson, J. H. Kent and wife, and Frank M. Smith, to foreclose a mortgage given by Daniel Skeans and wife, to plaintiff, on the 25th day of January, 1919, at which time the Skeans executed to the plaintiff one note for $6,000, and three notes for $400 each, due February 1, 1920, 1921, and 1922, and executed and delivered two separate mortgages, one securing the $6,000 note, and one securing the three $400 notes. And this suit was instituted to foreclose the second mortgage given to secure the three $400 notes. Subsequent to the execution of the notes and two mortgages aforesaid, Skeans conveyed the land covered by said mortgage to the Stansburys, and on January 2, 1920, Stansbury and his wife executed a mortgage in favor of C. L. Anderson, plaintiff in error, one of the defendants in the lower courts, to secure four notes for $1,000 each, due on the 31st day of December, 1920, 1921, 1922, and 1923. All of said mortgages were duly recorded in the office of the county clerk of Love county. On June 14, 1922, the plaintiff in error, Anderson, filed his answer and cross-petition, setting up his notes and mortgage, and asking for the appointment of a receiver to collect the rents and profits from the mortgaged premises. The defendant in error, the Marietta National Bank, filed its plea of intervention in the case on the 10th day of October, 1922, alleging that Stansbury had executed and delivered to it his note in the sum of $1,785, on April 4, 1922, and at the same time, he executed a chattel mortgage on the rents derived from the

mortgaged premises during the year 1922, to secure the payment of said note.

Briefly restated, the material facts are: The real estate mortgage declared on by the American Investment Company was given January 25, 1919; the real estate mortgage relied on by C. L. Anderson was given January 2, 1920; and the chattel mortgage given to Marietta National Bank was executed April 4, 1922, and the suit was instituted on the 2nd day of June, 1922. The case was tried to the court on November 10, 1922, and judgment rendered as prayed for to the American Investment Company and to C. L. Anderson and to the National Bank of Marietta for the amounts claimed. The court further held that the chattel mortgage held by the National Bank of Marietta was a superior lien as to the crop rents, as against the lien held by C. L. Anderson, by reason of his real estate mortgage, and also rendered judgment against C. L. Anderson for the cost of receivership, evidently on the theory that the receiver had been improperly appointed. From which judgment of the court the plaintiff in error, Anderson, appeals.

And while various assignments of error are set forth in the petition in error, the only questions presented in the brief are:

First. That the trial court erred in adjudging the claim and the chattel mortgage held by the Marietta National Bank to be superior to the claim of the plaintiff in error, under his real estate mortgage, with the appointment of a receiver, and,

Second. That the trial court erred in taxing the cost and expense of the receivership against the plaintiff in error.

The first assignment of error is based on the theory that under the terms and provisions of the real estate mortgage held by the plaintiff in error, that he is entitled to the crop, rents, and profit. The provision relied upon is as follows:

"That in case of default of any of the above conditions and agreements set forth and election of the mortgagee to declare the whole of said notes and accrued interest thereof at once due and payable and mortgagee may take possession of the property and premises hereby conveyed, and by himself or his agent, or in a suit for such possession, possess, hold, use and operate the same, receive the income and profits thereof, and apply the same upon the indebtedness hereby secured."

Relying on the above provision, plaintiff in error asks for the appointment of a receiver and, in his petition asking for the appointment alleges that the securities are insufficient, and that unless a receiver is ap-

pointed to take charge of, receive, and preserve the crops, rents, and income on said premises, that plaintiff in error will be seriously injured, and will sustain great loss, and, on this petition, without a hearing, the receiver was appointed.

Plaintiff in error, in his brief, seemingly takes the position that the crops are necessarily a part of the realty, and that the real estate mortgage covers same, and among other authorities cited in support of this contention, he specially calls attention to the case of Hartshorn v. Ingels, 23 Okla. 535, 101 Pac. 1045. This was a case in ejectment following a homestead contest, in which the plaintiff in the ejectment suit had been declared the rightful homesteader, and Mr. Justice ·Hayes, speaking for the court in that case, lays down this rule:

"Where there has been a recovery of the possession of the land held adversely, the successful plaintiff is entitled to a matured crop of corn standing unsevered on such land at the time of the final judgment of ouster and delivery of possession of the premises to plaintiff under a writ of restitution."

This rule, though harsh, may be proper in the given case, and might apply in many instances, but the case at bar is distinguishable from the case of Hartshorne v. Ingles, in that the rights of the parties in this case, we think, are to be determined by contract existing between the parties. No contractual relation existed between the parties in the Hartshorne-Ingles Case, however, there is a conflict of authorities as to whether or not the rule announced in that case is the correct rule. Many authorities holding that crops, both matured and immatured, are more nearly personal property than realty, and makes the distinction between real estate and personal property, or chattels, dependent upon the principle or rule of whether or not the thing or property in question is fructus naturales or fructus industriales, holding that those things which are the result of labor or industry of man are more properly personal property than real estate. While those things which are natural growth and production of the soil, so long as they are unsevered, more properly take the nature of real estate, but, as above stated, the question in this case being based on contract, the question involved in the cases cited is not controlling. The provision relied on by plaintiff in error, and heretofore referred to, found in the real estate mortgage was evidently a provision for the benefit of the mortgagee, in the event that at the time of foreclosure the real estate covered in the mortgage should be found insufficient to secure the debt, interest, and attorney's fees, that the mortgagee might avail himself of this provision and secure the appointment of a receiver to take charge of the rents and profits, and to possess himself of the premises and operate and control same for the benefit of himself, as mortgagee, and apply the rents and profits on the indebtedness. It is evident that he so considered the provision, for in his petition for foreclosure, in which he asks for the appointment of a receiver, he alleges that the securities are insufficient, and for that reason urges and prays for the appointment of a receiver, the court appointed the receiver without a hearing on the allegations of the petition, but, on the final trial of the case, the matter being submitted to the court, the court found that the allegations in his petition, as to the insufficiency of the security, were unfounded. Under the evidence, as disclosed by the record, the lowest estimate placed on the value of the real estate, was $18,000, and the indebtedness secured by the real estate mortgages could, in no event, exceed $12,000, and under the conditions of the evidence, the court found that the appointment of the receiver was improperly made, and he further found that the plaintiff in error, at whose instance the receiver was appointed, should be charged with the expense incurred by reason of the appointment. We think these facts change the rule and do away with the necessity and the rights of the plaintiff in error, mortgagee to avail itself of the right given under the provisions of the mortgage heretofore received, as against subsequent mortgages. And as a matter of equity and justice, the property covered by the chattel mortgage held by the defendant in error should be subjected to the payment of the indebtedness for which it was given as security, and we think this is in keeping with certain statutory provisions, which are as follows:

Chapter 59, art. 1, sec. 7406, Comp. Stat. 1921, provides:

"Contracts of mortgage and pledge are subject to all the provisions of this chapter."

Section 7418 of the above chapter reads as follows:

"Order of Resort for Payment of Prior Liens. Where one has a lien upon several things, and the other persons have subordinate liens upon or interests in some but not all of the same things, the person having prior lien, if he can do so without the risk of loss to himself, or injustice to other

persons, must resort to the property in the following order, on the demand of any party interested:

"First. To the things upon which he has exclusive lien.

"Second. To the things which are subject to the fewest subordinate liens.

"Third. In like manner inversely to the number of subordinate liens upon the same thing; and,

"Fourth. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had: (a) To the things which have not been transferred since the prior lien was created. (b) To the things which have been so transferred without a valuable consideration, and (c) To things which have been so transferred for a valuable consideration."

And the general rule of law is that under a real estate mortgage, in the absence of any specific provision covering the crops, rents, and profits that may be derived from the land during the term of the mortgage, same belong to and are under the exclusive control and dominion of the mortgagor, intermediate between the date of execution of the mortgage and the foreclosure of the same. It is true that where the mortgage is foreclosed and the sale is formally consummated, then the deed carries with it all of the rights pertaining to the land that would be conveyed by a deed of general warranty with all of the ordinary covenants, and **necessarily conveys** everything pertaining to the land, and may, in some instances, convey certain classes of property that are not necessarily real estate, in the absence of any reservation, it would include every character of crop and growing vegetation, which has not been severed from the soil at the time of the execution and delivery of the conveyance, but a mortgage being an instrument given, not for the purpose of conveying title to real estate, but for the purpose of securing indebtedness, does not, within itself, cover so broad a scope, and take from the mortgagor all of the rights and appurtenance, as will a deed of general warranty, and the question of whether or not crops, rents, and profits, should ever be subjected to the payment of the indebtedness, is one which depends upon the terms and conditions of the contract, or mortgage, and the necessity and exigency of the occasion, and the courts should always have due regard for the question of whether or not the security is sufficient, and for the rights of third parties intervening subsequent to the execution of the mortgages and prior to the foreclosure proceedings.

Article 7, page 3612, R. C. L., vol. 8, is as follows:

"There is a considerable difference of judicial opinion as to the rights of mortgagors and their tenants and vendees to crops standing on the land at the time of a foreclosure sale. In some jurisdictions the law is that the mortgagor is entitled to the crops, for to hold otherwise might result in the land lying idle. Other courts of high authority maintain that if a crop is ready to be gathered at the time of the foreclosure sale, it remains the property of the mortgagor or his tenant. And still others lay down the rule that the mortgagor may not himself claim the standing crop as against a purchaser at a foreclosure sale, yet if the mortgagor sells the crop before the sale of the land, the sale of the crop amounts to a constructive severance and conveys the right to it as against the purchaser of the land under a mortgage foreclosure. According to other courts, so long as the crop remains physically unsevered, it partakes of nature of the realty as between the mortgagor, and the mortgagee, and forms part of the latter's security for the payment of the debt, and all persons dealing with the mortgagor in respect to it while it remains actually attached to the freehold deal subject to all the rights of the mortgagee, unimpaired and unaffected. The result of this rule is that between the mortgagor or anyone claiming under him, whose claim matured subsequently to the mortgage, and the purchaser at a foreclosure sale, a growing crop does not become personal property until it is actually severed from the land, and, in the absence of such severance, passes to the purchaser. There is no hardship in this rule, for if a mortgagor makes preparations for a crop, he does it with a full knowledge that the land with the crop is subject to be sold, if the sale takes place before he severs it. Nor does he lose anything by this, for the crop on the land enhances the price. If by this increase the debt is overpaid, he gets the surplus; and if there is no surplus, still the full value of his labor goes to the payment of the debt secured by the mortgage. Under this rule, crops planted by a tenant of a mortgagor, who rents and plants the mortgaged land after the commencement of an action for foreclosure and the filing of a lis pendens, pass to the purchaser at the foreclosure sale; and so comprehensive is the rule that even the crops planted by a tenant of the mortgagor after the date of the mortgage pass to the purchaser of the realty on a foreclosure of the mortgage while the crops are still standing; and the purchaser may maintain trespass against such lessee for removing the crops. While a mortgage of the land gives a lien on everything that would pass by a grant of the land, which includes crops growing thereon, it is, nevertheless, well established that such lien, so far as the growing crops are concerned, is limited in its effect to the crops growing on and unsevered from the land

at the time of the foreclosure. It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist. * * *"

And while this text states both sides of the case, and calls attention to the conflict of authorities on this question, we think, taking it as a whole, fairly states the general rule, and in discussing the rule, the author seems to think it is supported by the weight of authorities in this country, and says:

"The result of this rule is, as between the mortgagor, or any one claiming under him, whose claim matured subsequent to the mortgage, and the purchaser at the foreclosure sale, a growing crop does not become personal property until it is absolutely severed from the land, and in the absence of such severance, passes to the purchaser."

This portion of the text might be construed to be favorable to the contention of plaintiff in error in this case, but when we further consider the application of the rule by the author, wherein he says:

"There is no hardship in this rule, for if a mortgagor makes preparation for a crop, he does it with full knowledge that the land with the crop, is subject to be sold, if the sale takes place before he severs it. Nor does he lose anything by this, for the crop on the land enhances the price. If by this increase the debt is overpaid, he gets the surplus; and if there is no surplus, still the full value of his labor goes to the payment of the debt secured by the mortgage"

—the application of the rule, as against the mortgagor does not necessarily work a hardship or injustice, but we do not think this rule should necessarily apply to those holding under a mortgagor, or holding subsequent mortgages on crops, where there is no necessity for the subjection of the crop to the lien secured by the real estate mortgage. This principle is born out by the provision of the statute, and where timely proceedings are instituted by the party holding the junior lien or chattel mortgage, to foreclose and protect his interest, prior to the final foreclosure and sale, and without injury to some prior lien holder, his right should be protected, if possible, if he should neglect to avail himself of his right and prosecute same, until the sale is made, under the foreclosure proceedings; then he would necessarily lose his right, for at that time all crops which have not been severed from the realty would necessarily follow and be conveyed by the deed, and would be sub-

ject to control and dominion of the purchaser into whose possession they had passed.

We think article 51, page 72, volume 22, R. C. L., under chapter entitled "profits," throws some light on the question, and is as follows, and also lays down the common-law rule:

. "Many distinctions abound in the books as to the rules in determining the character of property in fruits of the soil, attached thereto—whether they are to be considered chattel interests or as a part of the realty—the distinction most frequently referred to being that between such as are natural products of the soil, fructus naturales, and fructus industriales, though this distinctio. is rejected by many courts, and by others adopted. At common law these products of the earth which are annual, and are raised by yearly manurance and labor, and essentially owe their annual existence to the cultivation by man, termed 'emblements,' and sometimes 'fructus industriales,' are and always have been, even while still annexed to the soil, treated as chattels, with the usual incidents thereof as to seizure on attachment or sale on execution during the owner's life and transmission after his death. By some, however, they are not considered as personalty until they are ready to harvest. On the other hand, the fruit of trees, perennial bushes, and grasses growing from perennial roots. and called, by way of contradistinctions, 'fructus naturales,' where, while unsevered from the soil, considered as pertaining to the realty, and as such passed to the heir at the death of the owner, and were not subject to attachment during his life. Growing crops, although generally considered as personal property, pass with and as appurtenant to the realty in case of conveyance unless severed by reservation or exception therefrom; and they do not pass under a bequest of personal property. Ice on a pond, like water, belongs to the owner of the land and is for any purpose part thereof. Still there can be no doubt that ice may be transferred as personal property whether it is cut or uncut."

Article 66 lays down the following:

"The general rule is that growing crops, commonly called fructus industriales, are transferable in the same manner as personal property."

We think the rule, as applied in cases of this character, the correct rule. and applicable in all cases, save that of trespass, the rule as applied between mortgagee and mortgagor, should not be confounded with the proper application of the rule as applied to deeds of conveyance containing covenants of general warranty, and all of the covenants ordinarily found in such instruments, for in the absence of any reservation, every

thing is conveyed that is unsevered from the soil and in some instances, even though severed, if placed upon the premises for the purpose of making repairs or improvements, attached to the freehold, they may, likewise, be conveyed by general warranty, and conveys crops matured and immatured, unsevered from the soil. This rule, as applicable to conveyances of real estate, is discussed in section 39, of said volume 22, R. C. L. The rule as applying between the mortgagor and mortgagee is well stated in 27 Cyc., page 1247, subdivision 2:

"While growing crops are considered for some purposes, as a part of the realty, and may be conveyed by the lien of a mortgage, yet the mortgagor is the owner of all crops sown, grown, and harvested before foreclosure, with full power to sell or mortgage the same, unless the crops are specially pledged by the mortgage or the disposition of their proceeds expressly governed by it, and this right continues until foreclosure, entry for the purpose of foreclosure, or the appointment of a receiver, whereupon the right to the unsevered crops or other products of the land passes to the mortgagee as a part of the property liable to the satisfaction of his claims, not only as against the mortgagor, but also as against a tenant in possession under a lease made subsequent to the mortgage. A mortgagee and purchaser on foreclosure sale of ice-houses and of the right to cut ice from pond does not acquire title to the ice cut and stored in the ice-houses by a lessee of the mortgagor before the foreclosure sale. A trustee under a deed of trust, before foreclosure, cannot maintain an action for crude turpentine taken from trees on the land before his possession was acquired, and sold to a third person. A mortgagor in possession, on vacating a farm, has no right to remove or sell manure made thereon in the usual course of husbandry; the title thereto vests in the mortgagee as owner of the freehold. * * *"

We take it that the reference made in the authorities as to the appointment of a receiver presupposes a proper and rightful appointment of a receiver, and wherein it says that the property is liable to the satisfaction of his claim we take it that it applies only to the satisfaction of the claim, when there is a necessity for such application, and not where the real estate is ample to secure the indebtedness and where the rights of third parties have intervened and are to be considered. We think subdivision 3, found on page 1626 of the same authority, throws some light on this question, wherein the author states that:

"When the rents and profits are pledged for the payment of the debt, together with the land itself, they constitute a fund primarily liable for the debt, and in this case a receiver may be appointed, on the application of the mortgagee, without showing that the land is inadequate as security and without question as to the mortgagor's solvency. But still, even here, the appointment of a receiver is not a matter of course; the court may exercise its discretion as in other cases, and refuse the appointment if there appears to be no reason for granting it."

The inference from this quotation would clearly be that the appointment of the receiver does not necessarily change the material rights of the parties, unless the appointment is proper and the receiver a necessity to the protection of the rights of the mortgagees which otherwise would not be protected. It is true that where the mortgagee obtains possession, either in person or through his agent, properly appointed and constituted, and for good and sufficient cause shown, he may subject the crops, rents, and profits to the payment of his indebtedness against the mortgagor and all parties holding under him, but this rule is only proper and should only be applied where there is a necessity for its application, and in conformity with section 7418, Compiled Statutes, supra. And in the case at bar, we think no necessity existed, and hence the appointment of a receiver in no wise effects the rights of the parties, under the contract relied on. And there being no necessity for the subjection of the chattels covered by the chattel mortgage to the lien created by the real estate mortgage, we think the judgment of the trial court was correct.

The second assignment of error urged, pertaining to the taxing of the cost and the expense of the receivership against the plaintiff in error, this, we think, was within the discretion of the court. The court was evidently of the opinion that the receiver had been improvidently appointed, and that the party who brought about the appointment should be held responsible for the cost incurred. This is not an abuse of the court's discretion, and finding no material error the judgment of the lower court is affirmed.

By the Court: It is so ordered.