**STATE ex rel. COKER et al. v. DISTRICT COURT OF TULSA COUNTY et al.**

No. 22955. Opinion Filed April 19, 1932.

Rehearing Denied May 24, 1932.

Woodson E. Norvell and George E. Norvell, for relators.

W. D. Abbott and Paxton Howard, for respondents.

ANDREWS, J. This is an original proceeding in this court wherein the relators seek a writ of prohibition against the district court of Tulsa county, Okla., and the Honorable S. J. Clendenning, district judge.

An alternative writ was issued by this court and a response thereto was filed. Thereupon the relators filed a motion for the issuance of an absolute writ and a brief in support thereof. The respondents filed their brief and the cause is now before this court for determination as to whether or not the alternative writ heretofore issued should be made absolute.

From the pleadings on file, we find that, on August 18, 1931, the Tulsa Building & Loan Association, a corporation, commenced an action in the district court of Tulsa county, Okla., against John McD. Parks and Delia Parks, the makers of a promissory note and real estate mortgage, for a judgment for the amount due on the promissory note and against them, Myrtle E. Burney and Hattie Mayberry, purchasers of the real estate covered by the mortgage, and the relators, and others, tenants in possession of the premises under leases subsequent to the recording of the mortgage, for the foreclosure of the real estate mortgage. A receiver of the property was appointed and qualified in the foreclosure proceeding. He was authorized by the trial court to take charge of the property and to impound the rents and income therefrom pending the determination of the issues in the action. The receiver attempted to take possession of the premises and the relators refused to deliver to him possession of the portion of the property held by them. The trial court thereupon directed the relators herein and the other defendants to show cause why they should not surrender possession of the property to the receiver or pay rent to him for the occupancy thereof.

The relators each filed a response to that order. Pearl Fenimore alleged in her response that on August 3, 1931, she leased apartment "C" of the building from D. L. Wiley, who was then the owner of the premises, by a written lease for a term ending February 1, 1932; that she paid to her lessor the full amount of the rental for the term for her lease; that she was in possession of that portion of the premises and that her lease was made with the knowledge and consent of the mortgagee. She concluded therefrom that she was entitled to the possession of the property for the term of her lease. George A. Coker, in his response, alleged that he was in possession of a part of the premises under a written lease from one of the defendants, who, at the time of the making of the lease, was the owner of title to the premises; that that lease was made with the knowledge and consent of the mortgagee, and that he had paid the rental provided by the terms of the lease up to July 15, 1932, to his lessor. He concluded that by reason thereof he was entitled to possession of the premises. After a hearing the trial court made an order requiring the relators to pay rent to the receiver or to surrender possession of the premises, which they refused to do. The trial court then issued a writ of assistance for the purpose of carrying its order into effect. The relators filed an application asking the court to vacate the writ of assistance. That application was denied. The proceeding in this court was then instituted.

The authority of a district court to appoint a receiver in a proceeding to foreclose a mortgage on real estate is granted by the provisions of section 518, C. O. S. 1921. Adams v. Swan, 143 Okla. 162, 288 P. 476. The appointment of the receiver by the district court of Tulsa county was in an action in which the relators herein were defendants and after due notice. Since that court had the jurisdiction to appoint a receiver, the question of whether or not the appointment should have been made is one of fact and will not be reviewed in this extraordinary proceeding. The receiver was the agent of the court for the purpose of conserving the property involved in the action pending the determination of the merits of the claims to the property by the contending parties. As such he was entitled to the immediate possession of the property. The possession of the property by the re-

ceiver, under the appointment and order of the court, was the possession of and for the court and no suit or proceeding touching the property can be maintained but in that court in that action, or by leave of the court obtained in that cause. This result follows from the nature and scope of the proceedings, is necessary for the purposes for which receivers are appointed, and is elementary. Gayer v. Roddie, Receiver, 155 Okla. 27, 7 P. (2d) 847. See, also, Dillingham v. Russell, 73 Tex. 47, 11 S. W. 139. The continued possession of the property by the relators was dependent upon their payment of rent to the receivers, who was appointed for the purpose of collecting the rents on the property. Flynn v. Lowrance, 110 Okla. 150, 236 P. 594. In that case the authority for the receiver to dispossess tenants for failure to pay rent to the receiver was denied for the evident reason that the lease under which the tenants were holding possession had been executed by both the mortgagor and the mortgagee. But therein this court held that the tenants therein should be required to pay rent to the receiver pending the litigation. In the case at bar the relators are not claiming the right of possession under a lease executed by the mortgagee, and the receiver is only claiming the right to collect rent on the property from them.

In 42 C. J. p. 128, sec. 1704, the author states:

"After the appointment of a receiver the rents and profits of the mortgaged premises stand in the same category as the land itself; and the mortgagee acquires a specific equitable lien on the rents and profits. The receiver is entitled to all rents and profits accruing after the date of his appointment, in which claim he cannot be defeated by the payment of rent in advance by the tenant to the mortgagor, at the latter's solicitation and in anticipation of the receivership."

In 41 C. J., p. 634, sec. 611, the author of the article says:

"A lessee charged with notice of a prior mortgage anticipates the payment of rent at his peril."

In Fletcher v. McKeon, 75 N. Y. S. 817, that court said:

"It is sought to defeat this right which exists in the mortgagee in this case, and thus far it has been successful, for the reason that, before default was made in the terms and conditions of the mortgage, the owner of the equity of redemption leased to the defendant Luft these premises for a period of one year from the 1st day of March, 1901, and received payment of five months' rent in advance; and it is now solemnly asserted that by this act the owner of the equity of redemption has secured to himself this amount of rent, and that this lessee has the continued right to collect these rents until there shall have been an actual foreclosure and sale of the premises, and the delivery by the sheriff of his deed to the purchaser, and demand for possession made thereunder. Such is not the law, and never was; nor can it be found adjudicated in any well-considered case. The conclusion in support of it is based upon a fundamental misconception of the law.

"When the defendant Luft took his lease of the premises, he purchased an interest in land. If there had been no other outstanding incumbrance upon the property, he could have recorded his lease, and would have been protected thereunder as against all subsequent purchasers or incumbrancers; but at the time when he took his lease the plaintiff's mortgage was in existence, and had been since 1894, and was duly recorded, and was notice to him; and he took his lease subject thereto, and became bound by its terms, and by the remedies which might be invoked to enforce it, as did the owner of the equity of redemption under the mortgage. He stepped into the latter's shoes, and paid his money as rent in advance at his peril, subject to the right of the mortgagee, upon default in the terms of the mortgage, to foreclose the same, procure the appointment of a receiver, and take such rents from that time for application upon the mortgage debt. The owner of the equity of redemption could not defeat the right of the mortgagee by a lease of the premises, and secure payment of rent in advance. To hold that such right existed would open the door for successful fraud in every case of rent-productive mortgaged premises, where the security is inadequate for the payment of the mortgage debt. All that would be necessary to secure rents from the time of default until there could be a sale under a decree of foreclosure, and the production of a deed by the purchaser, would be for the owner of the equity of redemption to execute a lease, receiving rent in advance. During such period the earning power of the property would be at the mercy of such owners, even though it was utterly inadequate to pay the mortgage debt. And when we consider the obstacles which may be thrown in the way of the foreclosure of an honest mortgage, it is easily seen that fraud might arise out of such a condition which would be intolerable. It is sufficient now to say that, by the application of plain, equitable principles, no such result is permissible, and no such condition will be tolerated."

In Olive v. Levy, 194 N. Y. S. 88, that court held:

"A tenant under a lease, executed after a mortgage on the premises had been recorded, is liable to a receiver appointed in a suit to foreclose the mortgage, for the reasonable value of the use and occupation of the premises from the date of such appointment, though the lessee has paid the stipulated rental to the lessor in advance."

There is an excellent discussion of the subject in the case of Henshaw, Ward & Co. v. Wells, 9 Humphreys (Tenn.) 568, wherein that court said:

"If the mortgagor lease the estate, while he is permitted to retain the possession, the tenant can only enjoy such rights as the mortgagor possessed; for, said Chancellor Kent (4 Com. 157), 'every person taking under him, takes, subject to all the rights of the mortgagee, unimpaired and unaffected.' * * * But whether the tenant of the mortgagor, has actual knowledge of the mortgage or not, can make no difference; the registration is constructive notice to him, and he stands in exactly the situation of the mortgagor; for a mortgagor has no power, express or implied, to let leases not subject to every circumstance of the mortgagee. 1 Pow. on Mort., 60; Doug. Rep., 21; 4 Kent's Com., 156."

And:

"It is insisted, that a court of chancery has no jurisdiction to afford the relief now sought; that the tenant of the mortgagor cannot be regarded as the tenant of the mortgagee, unless the tenant attorn to the mortgagee, and that the mortgagee's only remedy is to turn the tenant out by an ejectment, and then sue for mesne profits,

"Upon this question, the authorities are somewhat contradictory, but the later cases seem to maintain the doctrine that the mortgagee cannot, by giving the mortgagor's tenant notice to pay rent to him, treat him as tenant, and distrain for rent, but, that, in order to recover rent, the mortgagee must bring his ejectment, and then recover for mesne profits. But where the mortgagee brings his bill to foreclose the mortgage, this doctrine has no application. If the fund is in danger, a receiver will be appointed, such appointment resting in the discretion of the court. 3 Dan. Ch. Pl. and Pr., 1949. When a receiver has been appointed, it is the duty of any party on the record to deliver up the possession of any lands and tenements that are in the occupation of the party, and the court, in appointing a receiver, may order that the tenants attorn to the receiver and pay their rent to him. 3 Dan. Pl. and Pr., 1982-3. If they refuse to attorn, on being notified by the receiver, the practice in England is, for the party obtaining the order for a receiver, to proceed against them for a contempt. Id., 1983. Thus, it will be seen that, in this case, the bank may be compelled to exhaust its remedies as to the estate the complainants cannot touch, before it will be allowed to obtain satisfaction from the estate mortgaged to the complainants; and one of those remedies is to have the rents of lot No. 9 applied to the first mortgage, seeing the fund is inadequate. This is plainly an equity the complainants have against the mortgagor, and the first mortgagee. But how can this be effected unless a receiver be appointed to collect the rents? Shall the first mortgagee be compelled to bring an ejectment to obtain possession, and then an action for mesne profits? Why all this delay and circuity of action, when the court has all the parties before it? Upon the foreclosure of a mortgage, our practice is to sell the estate, and pay the parties according to priority. The receiver is, therefore, for the benefit of all the parties; and we think the chancery court had power to make the appointment in this case, and through the intervention of the receiver, to collect those rents,—thus directly attaining the end which it is admitted the first mortgagee might have accomplished, by his ejectment, and his subsequent suit for an occupation rent."

The conclusion of that court was that the tenant was liable for a reasonable occupation rent from the time he had notice to pay to the receiver, notwithstanding the fact that he had executed negotiable promissory notes in advance for the rent and that those notes had been transferred to innocent purchasers, thereby making him liable thereon to the holder thereof. With respect thereto that court said:

"It is the tenant's folly, and misfortune, that he executed negotiable securities for the rent agreed on. He may, thereby, be required to pay the rent for this property, both to the mortgagor and mortgagee; but we cannot, on account of the hardship of the case, deprive the mortgagee of his unquestionable rights."

We are of the opinion that the correct rule is that a tenant of real estate, under a lease from a mortgagor executed after a mortgage on the premises had been recorded, is liable to the receiver in a suit to foreclose the mortgage for the reasonable value of the use and occupancy of the premises from the date of the demand of the receiver to pay rent to the receiver, although the lessee has paid the rent stipulated in his lease to the lessor in advance, and that a lessee of real estate charged with notice of a prior mortgage on the real estate leased anticipates the payment of rent thereon at his peril.

It is contended by the relators that the remedy of the receiver was by an action in forcible entry and detainer against them. Such is not the rule. Equity, having assumed jurisdiction of the property and having jurisdiction of the subject-matter of the action and of the persons of the defendants, will retain jurisdiction for all purposes. That is a fundamental principle of equity. The relators were parties to the foreclosure proceedings. Their claims to the property were set up by them in the proceedings and determined by the court. From the order of that court they had a right of appeal. Spradling v. Hudson, Dist. Judge, 45 Okla. 767, 146 P. 588. They cannot use an extraordinary remedy in lieu of the statutory remedy of appeal. The rule applicable herein is materially different from that stated in Hill v. First Nat. Bank of Porter, 150 Okla. 220, 1 P. (2d) 364, Exchange Nat. Bank of Ardmore v. Champion, Champion & George, 123 Okla. 53, 251 P. 1017, and Anderson v. Marietta Nat. Bank, 93 Okla. 241, 220 P. 883, and necessarily so. Therein an issue was presented as to the right to crops grown or growing on the land. Herein there is no such issue presented. In the Hill Case the claim of one of the contestants was based on a real estate mortgage and recorded as such and not filed as a chattel mortgage, and the claim of the other contendent was based on a chattel mortgage on the crop which was filed as a chattel mortgage. There was no showing that the chattel mortgagee had knowledge of the existence of the real estate mortgage at the time of the execution of the chattel mortgage. No such issue is presented in this case, for one of the contendents in this case claims under a real estate mortgage duly filed and recorded as such, and the others claim under leases on real estate, which constitute claims on real estate, and which, under the provisions of our law, are controlled by the provisions of our statute with reference to recording of real estate conveyances. The relators herein were charged with knowledge of the existence of the real estate mortgage by reason of the recording thereof. No action of theirs tended to increase the value of the property, as is done by the growing of a crop on land. They cannot be heard to say that the rights acquired by them, which, at the time they acquired them, were subject to the rights of the mortgagee, became superior to the rights of the mortgagee by reason of the fact that they paid rent in advance to their lessor.

The application for the writ is denied.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.