## GENERAL AMERICAN OIL CO. v. WAGONER OIL & GAS CO. et al.

No. 13815—Opinion Filed Oct. 13, 1925.

Rehearing Denied June 8, 1926.

1. **Trusts—Express Trusts — Adoption by Trustees of Collective Trade Name for Transacting Business.**

Under section 8465, C. O. S. 1921 (ch. 16, Sess. Laws 1919), authorizing the trustees of an express trust "generally to do any lawful act in relation to such trust property which any individual owning the same absolutely might do," the trustees of an express trust may adopt a collective trade name, or fictitious name for transacting business, executing contracts, or suing or being sued, since, under the laws of this state, an individual may adopt such fictitious name for such purposes.

2. **Same—Use of Collective Trade Name as Act and Deed of Trustees.**

Where a suit is brought in a collective trade name or fictitious name on a contract executed in such trade name, the plaintiff al-

leging that it is an express trust under the laws of this state, such contract and such suit are the act and deed of such trustees themselves, made and instituted in their collective trade or business name.

**3. Same—Pleading and Practice — Burden on Defendant to Prove Want of Legal Capacity in Plaintiff to Sue.**

Under such state of the pleadings, defendant alleging failure of plaintiff to comply with the recording acts and other requirements of the law governing express trusts in this state, the burden of proof thereto was on defendant alleging such affirmative defense, and failure of defendant to undertake such proof is equivalent to an abandonment of such defense.

**4. Parties — Legal Capacity to Sue—When Presumed.**

When the contrary does not appear from the face of the petition, the plaintiff is presumed to have the legal capacity to sue, and the burden is upon the defendant in the first instance, to show that such capacity does not exist.

**5. Trusts — Express Trusts — Validity—Estoppel by Dealing with Trust.**

One who executes a contract with a purported express trust as an entity, capable of transacting business, and in consequence receives from it things of value, is estopped to deny its capacity to maintain an action on, or the validity of such contract.

**6. Sales — Contracts — When Created by Law Between Purchaser of Crude Oil and Royalty Owner.**

When one purchases crude oil from the producer thereof, knowing that such producer is the owner of only seven-eighths thereof, and that some other person is the owner of the remainder as royalty or otherwise, the law creates a privity between such purchaser and such other owner and an implied contract on the part of such purchaser to pay for the aliquot part belonging to such other person.

**7. Disposition of Cause.**

Record examined, and held, that the evidence reasonably tends to support the judgment that an express warranty was not breached; that the record is otherwise free from prejudicial error, and that the judgment should be affirmed.

(Syllabus by Estes. C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Wagoner County; E. A. Summers, Judge.

Action by Wagoner Oil & Gas Company, an alleged express trust, against General American Oil Company, a corporation, J. P. Marlow et al. being interveners. Judgment for plaintiff and interveners, and defendant appeals. Affirmed.

Kleinschmidt & Johnson, for plaintiff in error.

W. O. Rittenhouse and Watts & Watts, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here, the Marlows being interveners. In October, 1920, a written contract was executed, signed by General American Oil Company and Wagoner Oil & Gas Company, by which the former, the defendant, agreed to purchase, and the latter, the plaintiff, to sell, the entire working interest production of oil from the leases of plaintiff, at a stipulated price per barrel, based on the price of Mid-Continent crude as posted by the Prairie Oil & Gas Company, f. o. b. loading racks per tank cars to be furnished by defendant, "on a nontemperature basis loaded full shell capacity, free from B. S. and moisture." Pursuant thereto, plaintiff delivered in November, 1920, four cars of oil which were paid for by defendant. In December, plaintiff delivered three other cars, for which, on failure of defendant to pay, plaintiff had judgment for seven-eighths thereof, and the interveners, the Marlows, on their cross-petition, for one-eighth as lessors' interest. The case was tried to the court without a jury. From such judgment, defendant appeals.

Plaintiff alleged that it was a "common law trust, or organization, organized under the laws of the state of Oklahoma, having its principal place of business in the city of Wagoner," etc. The written agreement sued upon was signed by plaintiff in this manner: "Wagoner Oil & Gas Company, by John S. Scriba, President," and attested: "Bertha A. Scriba, Secretary," and showed the seal of the company. Said contract was duly signed by defendant as a corporation. Defendant, by answer, denied that plaintiff was a common law trust, and averred that the alleged trust set forth in the petition was invalid, for that the same was not created by written instrument, subscribed by the grantors, duly acknowledged as conveyances of real estate, and recorded in the office of the county clerk of each county wherein is situate any real estate conveyed to the alleged trustees, as well as in the county where the principal property is located or business is conducted; that same was invalid also for that the alleged trust was not limited in duration to any definite period not to exceed 21 years, or to the

period of the lives of the beneficiaries, and that the trust agreement of plaintiff fails to specify the duration thereof; that the alleged contract sued upon was not binding on defendant for that same was not authorized in accordance with the provisions of the trust agreement, under which plaintiff purports to be created, in that same was not authorized by a majority' vote of the trustees at a meeting called according to the provisions of the trust agreement; and that the execution of the alleged contract was not authorized in the manner prescribed in the trust agreement. Defendant also pleaded a cross-petition against plaintiff on account of matters and things hereinafter referred to, claiming damages against plaintiff based on said contract and a breach thereof by plaintiff, praying that plaintiff take nothing by reason of its petition, and that defendant have judgment for its damages for breach of the contract. Plaintiff replied by general denial and defensive matter to the cross-petition. The first three assignments of error are comprehended in the propositions that the plaintiff had no legal capacity to sue and that there was no evidence to establish the nature or legality of its organization. The record thus squarely presents for the decision of this court two important questions: Can this suit be maintained in the name Wagoner Oil & Gas Company, without coupling the individual names of the trustees? Must the plaintiff have proven strict compliance with the statutes of Oklahoma relating to express trusts, before being entitled to judgment?

1. 4. A proper solution of the first of these questions requires some consideration of the nature of trust estates used as substitutes for business companies. For centuries English jurisprudence has recognized such estates as being founded upon sound principles of equity. The essential attribute of all such estates is that the estate itself, that is, the property, is placed in the hands of certain individuals, denominated trustees, to manage and deal with, for the use and benefit of others commonly called their beneficiaries, or cestuis que trustent. By instruments in writing establishing such trusts, powers of the trustees and their duties have often been defined with great particularity, and thereby it has been possible to adjust this form of business operation to a great variety of commercial activities. In America, the first extensive development of such trust estates in the business world came in the state of Massachusetts, so that even now they are frequently referred to in legal lore as "Massachusetts trusts." The instrument creating and establishing such trust estate has generally provided a collective trade name for the trustees, in which they may make contracts and carry on the business of administration. This is a convenient expedient which often avoids confusion and ambiguity as to the capacity in which such contracts are made, and the business in which said trustees are engaged. Such trade or firm name, when so used, may prevent misapprehension of third persons and of those dealing with the trustees, by making plain that the trustees are really acting as such rather than for themselves individually.

Oklahoma does have a statute forbidding copartners to sue upon contracts made in a fictitious name until they have first complied with certain recording acts, but it has been expressly held that this provision does not apply to an individual doing business in a fictitious name, but that such individual may operate in a fictitious name and make contracts which are binding upon him. See Robinovitz v. Hamill, 44 Okla. 437, 144 Pac. 1024. The second paragraph of the syllabus in that case is:

"A person, being the sole owner and manager of a business, has, in the absence of a statute to the contrary, the right to assume any name under which he chooses to conduct his business, so long as such business is conducted under such name in good faith, and may maintain an action for breach of contracts made under such business name."

In National Surety Co. v. Oklahoma Presbyterian College, 38 Okla. 429, 132 Pac. 652, it is said:

"It would have been better practice for plaintiffs to have brought their action against M. J. Gill, doing business under the name of M. J. Gill Construction Company; but that they may maintain an action against him in the name of the M. J. Gill Construction Company has not been questioned in the proceeding here, and such a procedure is sustained by respectable authorities upon reasons which appear satisfactory to us."

Numerous authorities are cited thereto. See, also, Roberts v. Mosier, 35 Okla. 691, 132 Pac. 678. In 29 Cyc. 270, it is said:

"Without abandoning his real name, a person may adopt any name, style, or signature, wholly different from his own name, by which he may transact business, execute contracts, issue negotiable paper, and sue or be sued"

Again, in 14 Pl. & Pr. 277, it is said:

"There is nothing so sacred in a name

that right and justice should be sacrificed to its sanctity. So a person may sue in any name in which he may contract as well as in any name by which he is generally known."

If there had been any doubt about the right or authority of such trustees to bring such action in a collective trade name prior to the enactment of chapter 16 of the Session Laws 1919, that doubt has been entirely removed by section 1 of said act, as follows:

"Express trusts may be created in real or personal property or both, with power in the trustee, or a majority of the trustees, if there be more than one, to receive title to, hold, buy, sell, exchange, transfer and convey real and personal property for the use of such trust; to take, receive, invest or disburse the receipts, earnings, rents, profits or returns from the trust estate; to carry on and conduct any lawful business designated in the instrument of trust, and generally to do any lawful act in relation to such trust property **which any individual owning the same absolutely might do.**" (Emphasis ours.)

If Mr. Scriba had been the owner absolutely of the crude oil sold and sued for herein, and had himself executed the contract in the identical manner shown herein —using such fictitious trade name—his act would be binding upon him. He could have sued or been sued in such name for its enforcement, or for damages for breach thereof.

In Sears' Trust Estates as Business Companies, sec. 187, it is said:

"Strictly speaking, it may be said that a trust cannot adopt a name. It has no power to do anything implying either volition or dissent. It is merely property with a characteristic attaching to or inhering in it. But trustees who represent it are individuals sui juris and they may adopt a name or names for transacting business, executing contracts or suing or being sued."

There is no statute in this state contrary to, or forbidding, the use of such fictitious or trade name by such trustees. It is urged that section 211. C. O. S. 1921, provides otherwise. That statute provides, in substance, among other things, that the trustee of an express trust may bring an action without joining with him the person for whose benefit it is prosecuted. Under the views herein expressed said trustees complied with said statute in that they brought this action in their collective trade name and could do so without joining the beneficiaries. Under the rule aforesaid, it was entirely competent for the trustees to act

under a collective trade name, even though it be entirely fictitious, and when they contracted in that name with the defendant, the contract was binding. Had the defendant sued for breach thereof, or to enforce the same, such trustees could not have been heard to say that they were not bound because they had not signed their own names. E converso, defendant cannot complain because the trustees bring this suit in their collective trade name. It necessarily follows that the trustees of an express trust may so do, as they appear to have done, and in so doing, the contract they executed and the suit which is now entered for breach thereof, are, respectively, the contract and the suit of the trustees themselves, made and instituted in their collective trade or business name. In view of the foregoing, our answer to the interrogatory first above propounded must be that this case was maintainable by the trustees in the name "Wagoner Oil & Gas Company," and that in such name the trustees themselves have brought this suit.

We now recur to the second interrogatory above propounded, whether the fact that the instrument was not introduced in evidence, and no proof made of its recordation, etc., is fatal to plaintiff's recovery. It is a general rule that one who pleads an affirmative defense must prove the facts therein alleged, and that his failure to do so is equivalent to an abandonment thereof. Authorities are unnecessary thereto. In this case, the defendant specifically pleaded failure of the plaintiff to comply with the recording acts and other requirements of the express trust statute above referred to, but offered no proof thereon. The law never presumes that acts, which upon their face bear no evidence of illegality or contravention of public policy or morality, are invalid, but rather the presumption to the contrary prevails. Boyce v. Augusta Camp M. W. A., 14 Okla. 642, 78 Pac. 322, holds:

"When the contrary does not appear from the face of the petition, the plaintiff is presumed to have the legal capacity to sue, and the burden is upon the defendant in the first instance, to show that such capacity does not exist."

The foregoing principles require that the answer to the second question must be to the effect that the plaintiff owed no duty to the defendant to establish by positive proof its compliance in detail with the express trust statute above referred to, and that such failure does not militate against the judgment rendered in this cause.

5. Moreover the general rule of estoppel

stated in 5 C. J. 1336, is applicable against defendant:

"One who deals with an association as a legal entity capable of transacting business, and in consequence receives from it money or other things of value, is estopped from denying the legality of its existence." Petty v. Brunswick (Ga.), 35 S. E. 82.

While the trustees may not be said to be an association or legal entity, the principle announced aforesaid is applicable. Defendant executed the contract sued upon so as aforesaid; received and paid for four cars of oil thereunder, and filed a counterclaim herein against "Wagoner Oil & Gas Company," based on alleged breach of such contract by plaintiff. Without further elaboration of this feature of the case, it would seem defendant is scarcely in a position to question either the capacity of plaintiff to maintain this action, or the validity of the contract.

6. It is contended that the evidence is insufficient to sustain the judgment against it in favor of the interveners, tne Marlows, for that there was no privity of contract between them and defendant. The interveners did not sue on the contract between them and the defendant, but on implied contract against both plaintiff and defendant. Defendant denied the title of the interveners to the lessors' one-eighth of the oil. However, the record shows that the defendant knew from the beginning that one-eighth of the oil did not belong to plaintiff. The unloading report for the first three cars shipped to, and received by, defendant, shows that fact. The following rule from 13 C. J. 704, is applicable:

"Where one through a contract with another has obtained property which rightfully belongs to a third person, the latter may sue therefor in his own name, as the law creates both the privity and the promise. The transaction does not create a trust in the proper sense, nor does the third person's right arise out of the contract between the promisor and the promisee; but it arises out of an independent contract created by law, or quasi contract, between the promisor and the third person." 6 R. C. L. 588.

There was an independent or implied contract created by law binding defendant to pay interveners for their aliquot part of the oil.

7. Other assignments of error involve the proposition that there was a breach of both the express and implied warranty of fitness of the oil, in that the oil was not free from B. S. (bottom sediment) and moisture. This is the subject of the counterclaim of

defendant and is in the nature of confession of the capacity of plaintiff and the validity of the contract. The contention is that the oil was inferior because of the B. S. and moisture, was suitable only for fuel oil, defendant being liable only for its reasonable value, and being entitled to credit for the amount of water therein and for expenses incurred in attempting to refine the oil. The court found that the contract contained an express warranty that the oil should be free from B. S. and moisture, and that defendant failed in proof of breach thereof. We do not deem it necessary to summarize the evidence as to the content of the B. S. and moisture of this oil, such evidence being sharply in conflict. Under the well-known rule, there being competent evidence reasonably tending to support the judgment in this behalf, same cannot be disturbed. It is further contended that there was a breach of implied warranty of fitness it being admitted by plaintiff that the oil was sold for refining purposes. While defendant pleaded that the oil was not fit for the purpose for which it was sold and could not be refined, such unfitness as predicated solely on the alleged content of B. S. and moisture. But defendant failed to sustain its contention that the oil was unfit for the purpose for which it was sold, because it failed to sustain its allegation as to said contents, and made no further allegation or proof that the oil was unfit for refining because it contained other substance, or for other reasons than as alleged.

It becomes unnecessary to discuss the other assignments of error regarding alleged damages suffered by defendant. No prejudicial error appearing, let the judgment be affirmed.

Proper application having been made for a judgment against the sureties on the supersedeas bonds herein, it is considered that such judgments ought to be awarded. It is therefore ordered and adjudged that the plaintiff, Wagoner Oil & Gas Company, do have and recover of and from L. E. Z. Aronson, A. E. Aronson, and Thomas G. Martin, sureties on the supersedeas bond herein, the sum of $1,722.46, with interest thereon from March 7, 1922, and for costs: and that the interveners, J. P. Marlow and Ellen Marlow, do have and recover of and from L. E. Z. Aronson, A. E. Aronson, and Thomas G. Martin, sureties on the supersedeas bond herein, the sum of $592.50, with interest thereon from March 7, 1922, and for costs, for all of which let execution issue.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. p. 270; 39 Cyc. p. 292. (2) 39 Cyc. p. 34 (Anno). (3) 39 Cyc. p. 459. (4) 30 Cyc. p. 98 (Anno). (5) 21, C. J. p. 1237, § 243. (6) 13 C. J. p. 245, § 10. (7) 4 C. J. p. 879, § 2853; 35 Cyc. p. 465.