# WAGONER OIL & GAS CO. v. MARLOW et al.

No. 18898.   Opinion Filed March 26, 1929.

Rehearing Denied June 11, 1929.

John H. Scriba, for plaintiff in error.

John C. Graves and Watts & Broaddus, for defendants in error, J. P. Marlow and Ellen Marlow.

See, also, 136 Okla. 29, 275 Pac. 1036.

W. O. Rittenhouse, for G. F. Waggoner, Receiver.

John C. Graves, for W. O. Rittenhouse.

ANDREWS, J. J. P. and Ellen Marlow, husband and wife, defendants in error, hereinafter referred to as plaintiffs, instituted this suit in the district court of Wagoner county against Wagoner Oil & Gas Company, plaintiff in error, hereinafter referred to as "the trust," by filing therein their petition on the 11th day of February, 1922, in which they alleged that they were the owners of certain lands therein described.

It was further alleged therein that John H. Scriba and other persons, on or prior to February 17, 1929, formed a trust under the firm name and style of the Wagoner Oil & Gas Company, and under such name entered into the business of prospecting for oil and gas, and appointed the said John H. Scriba as manager and active representative of the trust and delegated to him authority to contract for and buy and sell oil and gas leases, and prospect for oil and gas upon leases so taken and held in the name of said trust, and further agreed among themselves that said John H. Scriba could institute and prosecute or defend any and all actions brought by or against them in their business so conducted as the business of said trust, and that summons issued against the Wagoner Oil & Gas Company in any action might be served upon

the said John H. Scriba and that the same would be due notice to them and each of them, and that any judgment rendered against the trust after summons upon John H. Scriba would be a binding judgment, conclusive against all of said parties.

Petitioners further alleged that in 1918 they executed and delivered to one Volpel a producer's 88 oil and gas lease on a part of the land; that Volpel sold and assigned this lease to the Missouri Pippin Oil & Gas Company, and that in 1920 that company sold and assigned this lease to the trust; that in 1920 they leased the remainder of the land to one Kingham under a producer's 88 form, which in 1920 was sold and assigned by him to the trust.

The petitioners alleged that the trust entered on said lands and drilled wells under the provisions of these leases and had production therefrom to the amount of 125 barrels of oil per day; that by the terms of said leases the trust agreed to deliver to them, free of cost, in the pipe line to which said wells might be connected, the equal one-eighth part of all oil produced and saved from the leased premises; that the wells were drilled according to the terms and tenor of said leases; that by the terms of said leases it was agreed that the trust would bury all pipe lines below plow depth and pay all damages caused by its operation to growing crops on said land, and would commit no unnecessary waste thereon; that the trust had breached the covenants of said leases by failing, refusing, and neglecting to pay to plaintiffs or deliver over to plaintiffs free of cost in the pipe line to which said wells were connected, the undivided one-eighth part of all oil produced and saved from the leased premises and had converted to its own use the one-eighth part of said oil so produced and the proceeds thereof, and had failed, refused, and neglected to account to plaintiffs for same; that the trust had caused numerous strings of pipe line to be laid upon said premises and had failed, refused, and neglected to bury the same below plow depth, although requested by plaintiffs so to do; that the trust had further breached the covenant of said leases in that it had damaged the growing crops of plaintiffs and had wantonly and uselessly permitted a refuse from the wells to be scattered over approximately 40 acres of said land, thereby destroying the same for agricultural purposes, and by reason thereof had been guilty of waste to the damage of plaintiffs in the sum of $1,000.

There was the further allegation that plaintiffs had been damaged $1,000 by the refusal of the trust to turn over to them their royalties, and $1,000 for injury to said real estate, and that by reason of said acts of the trust and its negligence and carelessness it had forfeited all rights to further operation of said leases and the same should be canceled.

The leases were attached to the petition.

The prayer was for cancellation of said leases and restoration to plaintiffs of the complete possession of said premises and enjoining the trust and all persons interested therein from setting up any right, title, claim, or interest in and to said real estate by virtue of said leases, together with judgment for costs and all other proper relief.

Attention is called to the fact that the petition nowhere alleged insolvency of the trust, or want of an adequate remedy at law, and contained no offer to do equity.

Summons was issued for the trust and contained a direction to serve same on John H. Scriba, manager, and service thereof was so made.

Six days after the filing of said petition and on the 17th day of February, 1922, there was filed by W. O. Rittenhouse, who is one of the defendants in error, as attorney for the trust, an answer admitting ownership of the land by plaintiffs; ownership of the leases and operation thereof by the trust; possession by the trust under the leases; that the trust had drilled wells under the terms of the leases and that plaintiffs were entitled to one-eighth of the oil as alleged by plaintiffs; and denying all other allegations, specifically denying conversion of any part of the oil by the trust, and that it had failed and refused to account to plaintiffs therefor; specifically denying any waste or any damage to plaintiffs and denying breach of any of the provisions of the leases, and that plaintiffs were entitled to cancellation and forfeiture thereof. The prayer was that plaintiffs take nothing and that the trust have judgment for its costs.

Thereafter, by proper order, the Wagoner Refining Company was made a party defendant, and plaintiffs filed their amendment to the petition. This amendment alleged all of the matters and things alleged in the petition, and in addition thereto that the trust had delivered all of the products from the leasehold to the refining company, as the Wagoner Refining Company will hereinafter be referred to, without the consent of plaintiffs and under an agreement and with the intent to cheat and defraud plaintiffs out

of the oil and gas products; that an accounting had never been had, and that plaintiffs were entitled to an accounting and for the value of the oil against each of the defendants, and that defendants had converted said oil. Prayer was for judgment against each defendant for the value of said oil products, together with all matters prayed for in the original petition.

The refining company answered by general denial. On the 18th day of November, 1922, plaintiffs filed their verified petition for a receiver, alleging:

"That said oil properties are now producing an average of 50 barrels of oil per day and have been since the third day of January, 1922. That during all of this time the defendants herein have failed, refused and neglected to pay the plaintiffs their one-eighth royalty from said wells. That said Wagoner Oil & Gas Company has during all of said time squandered and dissipated the proceeds of said wells, and during the five months last past has, with the Wagoner Refining Company, converted all of the proceeds of said wells to their own use. That unless a receiver be appointed to take charge of said property and operate same under the orders of this court, the plaintiffs will be irreparably damaged. Wherefore, plaintiffs pray that the court appoint some competent person as receiver to take over said properties and operate them as the court may direct."

Attention is called to the fact that the petition for the appointment of receiver did not allege insolvency, or want of an adequate remedy at law, and contained no offer to do equity.

Notice of the hearing on this petition was accepted by W. O. Rittenhouse as attorney for the trust.

The number of this cause was 4778. There was another cause pending in the same court between J. P. Marlow, as plaintiff, and the trust, as defendant, which was numbered 4798.

On February 20, 1923, there was entered on the minutes in cause No. 4798, but with a caption as in 4778, an order appointing G. F. Waggoner, one of the defendants in error, as receiver, and fixing his bond. Oath of office was filed in No. 4798 with a caption as in No. 4778. On March 2, 1923, an order appointing receiver was filed in No. 4798 with a caption as in No. 4778, showing the appointment to have been made on February 20, 1923. There is nothing in the record to indicate any notice of hearing for this date and no order is shown continuing the matter from February 13, 1923, to February 20, 1923.

The order appointing receiver is as follows:

"Now, on this 20th day of February, 1923, the above-entitled cause coming on regularly for hearing upon the application of the plaintiff herein for an appointing of a receiver, and the court having heard the evidence and being well and fully advised in the premises, does find that a receiver should be appointed as hereinafter set out.

"It is therefore by the court, considered, ordered and adjudged that G. F. Waggoner, of Wagoner, Okla., be and he is hereby appointed as receiver to immediately take possession and control of the following described property, to wit: Any and all valid existing oil and gas leaseholds now held and owned by the defendant, Waggoner Oil & Gas Company, covering lot 2, and the southeast quarter of the northwest quarter of section 30, township 17 north, range 18 east, and the southeast quarter of the northeast quarter, of section 25, township 17 north, range 17 east, Wagoner county, Okla., together with any and all oil or gas wells therein and equipment pertaining thereto, including all storage tanks, on said premises, pump stations, casing, tubing, engines, pumping jacks, and any and all other equipment or paraphernalia of whatsoever kind or character, owned and used by said company and used in connection with the production of oil and gas from said premises.

"It is further considered, ordered and adjudged by the court, that said receiver shall have the right to use any and all pipe lines belonging to said company and power plants connected therewith or pertaining thereto for the purpose of transferring and marketing any oil or gas received and produced from said premises, without additional or further expense of receiver. And said receiver is hereby authorized and directed to do and perform all things necessary to be done and performed for the proper conducting and managing of said property and for the preservation and conservation of the same; to market and sell any and all oil or gas produced therefrom and to collect and receive the purchase price thereof; also to collect and receive any and all rentals, royalties, or other moneys that may now be due and owing to the said Wagoner Oil & Gas Company from any purchaser or purchasers of oil or gas that has heretofore been produced and sold from said premises or any part thereof; and to do and perform such other and further duties, incident and necessary for the carrying out of the purposes of said receivership, as herein set forth.

"It is further ordered by the court that said receiver shall execute and file with the clerk of this court a good and sufficient bond in the sum of $1,000 to be approved by the clerk of this court.

"Said receiver is hereby authorized to and directed to do and perform such other matters and things pertaining to said property as may hereafter arise."

It is apparent that this order appointed a receiver over property other than that in which the plaintiffs claimed any interest and that it recited no reason for its finding that a receiver should be appointed.

Cause No. 4798 was an action in which one of the plaintiffs asked judgment for a large amount of money. In settlement of that suit it was agreed between the plaintiffs and the trust, acting through its attorney, W. O. Rittenhouse, that a judgment be entered in the case at bar, and pursuant to said agreement on the 29th day of March, 1923, an "agreed" judgment was entered in the case at bar finding that the trust was the owner and holder of the lease in question and was in the quiet and peaceable possession thereof and entitled to retain the same and that plaintiffs were entitled to recover of and from the trust $1,000 as damages. Judgment was rendered in favor of the plaintiffs and against the trust for $1,000, quieting the title of the trust in the oil leases and specifically reserving for the future consideration and determination by the court the question of the amount of damages for injury to the real estate and royalty due and owing to the plaintiffs from the trust as set out in the plaintiffs' petition.

It is apparent from this instrument and the evidence shown by the record that on March 29, 1923, cause No. 4798 was settled by the judgment in cause No. 4778, and that the title of the trust to the leases in question was quieted by this judgment in consideration of a judgment in favor of the plaintiffs and against the trust in the sum of $1,000, and it is equally clear that the claim of the plaintiffs as set out in their petition for damages to the land and for the royalty oil was not determined by the agreed judgment, but was reserved for future consideration by the court. This judgment contained the further statement:

"It appears to the court necessary and proper that the general duties of G. F. Waggoner, receiver heretofore appointed in the above-entitled cause, be enlarged, and all parties consenting thereto.

"It is by the court considered, ordered and adjudged that said G. F. Waggoner shall take possession of all the property of the defendant, Wagoner Oil & Gas Company, and shall exercise all such power over said property as is usually exercised by receivers in the discharge of such duties as is usually customarily necessary; that said receiver shall continue to operate the business of said Wagoner Oil & Gas Company and to manage its properties in such manner as will in his judgment produce the most satisfactory result consistent with the discharge of said duties, and to collect and receive all income from said property, and all debts due, and revenue in which said defendant is entitled to employ, discharge, and fix the compensation of all assistants, agents, employees by him deemed necessary, to institute and prosecute as well as defend all suits by and against said company; to appear in and defend in his own name or otherwise, all suits now pending in or hereafter brought by or against said company; to compromise and settle all claims or suits which have or may arise on account of the operation of said property. All of which shall be subject to the approval of this court.

"Said receiver shall, within 30 days from this date prepare and file in this court a full and complete inventory in writing of all property of said Wagoner Oil & Gas Company, which said receiver is able to locate and take into his possession or under his control, and shall make application to the court from time to time for further instructions or orders of this court when needed."

Thereafter the receiver proceeded to take charge of all the property of the trust; to give notice to creditors to present claims; to defend litigation, and to handle the property under the order of the court as though he was the receiver of a corporation.

Intervening petitions were filed in this cause by various creditors; claims were filed by various creditors with the receiver; the receiver was authorized and did use the property of the trust in drilling a dry hole on adjoining land, the cost of which he paid out of the receivership funds, and the entire business of the trust was from that date handled by the receiver.

John H. Scriba was on the witness stand when the order was made appointing the receiver, and his actions, as shown by the record, evidence his full knowledge of the actions of the receiver throughout its existence.

The record shows that defendant in error W. O. Rittenhouse became the attorney for the defendant in error G. F. Waggoner, receiver.

On the 13th day of March, 1925, there was filed in this cause the motion of the trust to vacate and set aside the judgment of March 29, 1923, on the grounds of fraud in the procurement, want of evidence, concealment of the facts from the court, and fraud.

ulent appointment of a receiver, and prayed the vacation of the judgment, permission to answer, the discharge of the receiver, an accounting by him, and other equitable relief.

On the 30th day of April, 1925, there was filed in said cause by the receiver, acting through W. O. Rittenhouse, his attorney, a petition which set out the amount of the claims against the trust, and the appraisement of the trust property. This petition alleged that the creditors were insisting upon a sale of the property of the trust, that it was not possible to operate the property in a manner to defray the operating expenses and pay the indebtedness without continuing to operate over a period of several years, and that the receiver thought the time opportune to sell the property. He recommended a sale of all the property of the trust and prayed that he be authorized to sell all the property of the trust.

On the 30th day of April, 1925, the court made an order of sale based upon the petition to sell, as aforesaid, which found that the property could not be operated in a way to pay the claims in anything like a reasonable time; that it was necessary and for the best interest of the creditors that the property be sold, and ordered a part of the property sold at public sale, after 30 days notice, and the remainder at private sale, all subject to confirmation by the court.

The motion to vacate judgment filed March 13, 1925, was overruled on May 29, 1925. Notice of the sale was given and fixed the date of the sale as June 9, 1925, and on the 9th day of June, 1925, the court made an order which postponed the date of the sale until July 9, 1925, but it does not appear that any other notice of sale was given.

The receiver filed a report of the sale as made on July 9, 1925, and stated herein that:

"At the request of some of the creditors present and in compliance with the oral instructions and directions of this honorable court, your receiver first offered for sale all of the personal property included in the mortgage held and owned by the First State Bank of Wagoner, which forms and constitutes the necessary part of the equipment of and the successful operation of the oil and gas leases belonging to the Wagoner Oil & Gas Company, together with all of the 2-in. pipe line extending from said leaseholds to the loading rack, which was included in said mortgage"

—and sets out other material deviations from the instructions of the court in the order of the court for the sale of the property. The sale was made to B. A. Stephens and the report was that the purchase price had not been paid. The trust filed its exceptions to the sale; questioned the correctness of the appraisement, and alleged error in the judgment appointing receiver as set out in the motion to vacate the judgment which was referred to in the exception. Thereafter certain judgments and claims against the trust were assigned to B. A. Stephens, trustee.

On July 17, 1925, the court confirmed the sale of the property. This order provided that the purchaser might pay the cost, including receiver's compensation and attorney's fees, and such additional sum as was necessary for distribution to creditors of the trust whose claims had not been sold and assigned to B. A. Stephens. The amount was left for future determination by the court.

An application was filed for allowance of attorney fees for defendant W. O. Rittenhouse.

Thereafter the receiver filed his account.

John H. Scriba, as a stockholder and creditor of the trust, filed his exceptions to the account, and the defendant in error H. B. Shefts, one of the creditors, filed exceptions to the sale of the property.

On December 15, 1925, B. A. Stephens filed her motion for order nunc pro tunc in which she alleged that she was the purchaser of the property as trustee for herself and other parties and showed to the court:

"That in the original order appointing receiver in the above-styled and numbered cause of action, no grounds or reasons are set out for the appointment of receiver, nor are any grounds set out showing the necessity therefor, but your movant is advised that the court, after due consideration of all the matters and things before the court at the time said receiver was appointed made such appointment believing that same was necessary that the oil produced by the defendant company could thus be marketed and the property further developed, and that it would be to the interest of the general creditors and stockholders of said company.

"Wherefore, movant prays the court to make and enter a nunc pro tunc order as of February 20, 1923, correcting by specifying in such order of appointment of receiver the particular grounds and reasons for such appointment."

On the same day, the 15th day of December, 1925, the court on ex parte hearing and without notice, made an "order appointing

receiver as corrected nunc pro tunc," as follows:

"Now, on this 15th day of December, 1925, B. A. Stephens having heretofore filed her motion in the above-entitled cause praying for an order of the court to correct and amend the original order appointing receiver in said cause under date of February 20, 1923, and correcting said original order appointing to show grounds and reasons for such appointment, and it appearing to the court that the said B. A. Stephens, trustee, for and on her own behalf and other parties in interest, was the purchaser of all of the property of the Wagoner Oil & Gas Company, the above-named defendant, at receiver's sale on, to wit, the 9th day of July, 1925, and that said sale was thereafter confirmed by the court by order of confirmation under date of July 17, 1925, and now, B. A. Stephens, trustee, having filed her motion for correction of said original order appointing receiver to set out therein the grounds and reasons for said appointment, and it appearing to the court that the application of B. A. Stephens, Trustee, is in all things proper, the said receiver not having as yet executed a deed of conveyance to said property to the said B. A. Stephens, trustee, and said receiver's final report not yet having been heard and approved by the court,

"It is therefore ordered, adjudged and decreed by the court that said original order appointing receiver be and the same is hereby corrected and amended as of date of February 20, 1923, to read as fol'ows:

"'Now on this 20 day of February, 1923, the above-entitled cause coming regularly on for hearing upon the application of plaintiff herein for the appointment of a receiver, and the court having heard the evidence and being well and fully advised in the premises, finds that a receiver should be appointed for the following grounds and reasons, to wit:

"'The court finds that there is very considerable indebtedness due and owing by the defendant, Wagoner Oil & Gas Company, amounting to in the aggregate of more than $20,000 to divers and sundry creditors, the claims of some of whom have heretofore been reduced to judgment, and that there are at this time different liens existing upon the property of the defendant Wagoner Oil & Gas Company, and the court further finds that on account of the inability of defendant company to market its oil in such quantities as will probably enable defendant to pay off and liquidate its indebtedness, the plaintiff herein having failed and refused and still refusing to sign a division order, and the defendant therefore being unable to market its oil without such division order, and is therefore insolvent, and no likelihood existing that the defendant will be able to liquidate its indebtedness unless its production can be marketed, and it appearing to the court that it is to the best interest of the creditors and stockholders of said defendant that a receiver be appointed,

"'It is therefore by the court, considered, ordered and adjudged that G. F. Waggoner, of Wagoner, Okla., be and he is hereby appointed as receiver to immediately take possession and control of the following described property to wit: Any and all valid existing oil and gas leaseholds now held and owned by the defendant, Wagoner Oil & Gas Company, covering lot 2, and the southeast quarter of the northwest quarter of section 30, township 17 north, range 18 east, and the southeast quarter of the northeast quarter of section 25, township 17 north, range 17 east, Wagoner county, Okla., together with any and all oil or gas wells thereon and equipment pertaining thereto, including all storage tanks on said premises, pump stations, casing, tubing, engines, pumping jacks, and any and all other equipment or paraphernalia of whatsoever kind or character, owned and used by said company in connection with the production of oil and gas from said premises.

"'It is further considered, ordered and adjudged by the court that said receiver shall have the right to use any and all pipe lines belonging to said company and power plants connected therewith or pertaining thereto for the purpose of transferring and marketing any oil or gas received, and produced from said premises, without additional or further expense to said receiver.

"'And said receiver is hereby authorized and directed to do and perform all things necessary to be done and performed for the proper conducting and managing or said property and for the preservation and conservation of the same; to market and sell any and all oil or gas produced on said premises and to collect and receive the purchase price thereof; also to collect and receive any and all rentals, royalties, or other moneys that may now be due and owing to the said Wagoner Oil and Gas Company from any purchaser or purchasers of oil or gas that has heretofore been produced and sold from said premises or any part thereof; and to do and perform such other and further duties, incident and necessary for the carrying out of the purposes of said receivership, as herein set forth.

"'Said receiver is hereby authorized and directed to do and perform such other matters and things pertaining to said property as may hereafter arise'."

Attention is called to the fact that this nunc pro tunc order finds that there is indebtedness owing by the defendant company and that it is unable to market its oil to pay off its indebtedness and that by reason of the plaintiffs' refusal to sign a division

order the trust could not market its oil or pay its debts. None of these allegations were made in the petition, amendment, or the petition for the appointment of a receiver. On the 3rd day of November, 1926, the trust applied to the court for an order vacating the judgment of February 20, 1923, appointing the receiver, the judgment of March 29, 1923, giving judgment against the trust for $1,000, and the order of March 18, 1925, fixing the claims of the creditors, and set out a number of reasons, among which we call attention to the following:

"Said application for appointment of receiver did not show sufficient grounds for the appointment of a receiver and said appointment was not authorized by law and by the statutes of Oklahoma"

—and that the judgments taken against the trust in an action against the receiver were void and not liens upon the property of the trust.

Thereafter the trust filed an amended answer in which it denied any damage to the crops or any waste, denied refusal or failure to pay royalty, and the conversion of oil, and alleged that plaintiffs had refused to sign a division order and that their failure to sign a division order made it impossible to receive any funds from the oil. It also denied that they permitted oil and salt water to scatter over the land. There was also a general denial.

On the 12th day of February, 1927, B. A. Stephens filed her motion to intervene, and upon being allowed so to do she filed her plea of intervention and set up title to the property. These allegations were denied by the trust. On March 8, 1927, plaintiffs filed their response to the amended application to vacate the judgment and alleged that at the time of the filing of plaintiffs' petition the trust was, and is now, wholly insolvent. This appears to be the first allegation of insolvency in this record.

On the 10th day of March, 1927, plaintiffs filed their response to the amended application to vacate judgment and alleged that the $1,000 judgment was a valid judgment.

The trust filed its reply, and on March 22, 1927, the court made its order refusing to vacate the judgment. A motion for new trial was filed and overruled, and on the 5th day of April, 1927, permission of the court having been granted, an amended answer and cross-petition was filed by the trust. The answer conformed to the former answer, and the cross-petition alleged affirmative matter on which a judgment was

prayed. To this amended answer and cross-petition plaintiffs filed a demurrer. Though this answer and cross-petition was a general denial in terms, the court considered this demurrer as a motion to strike, and struck the answer and cross-petition from the files.

Trial was had on the 13th day of May, 1927. The court found and adjudged that the plaintiffs should have judgment against the trust for $350 for damages to the land, and the same was ordered listed among the general and unsecured claims against the trust. The court found and adjudged the issue as to unpaid royalty in favor of the trust. The receiver was allowed a fee of $1,450. W. O. Rittenhouse as attorney for receiver was allowed an attorney's fee of $1,000.

A motion for new trial was filed and overruled.

The record shows that there were objections taken to all the orders, and that notice of appeal was given as to all the judgments and orders, and that this appeal was filed in this court within the statutory time after the final judgment.

We have set out the record extensively for the reason that error is alleged to have been committed throughout this proceeding, and almost every step taken therein was objected to by the trust and motions or petitions filed to vacate the various orders of the trial court.

The brief of the trust is extensive and the points sought to be raised by the appeal are so concealed among the mass of words used that it is difficu't to separate them. Some of them are apparently without any merit and worthy of little consideration by this court. Among those is the contention that the court was without jurisdiction over the subject-matter. The petition is a complete answer to that contention. The court had jurisdiction.

Another contention is that the court had no jurisdiction over the person of the trust. If that was ever a valid objection,—and we do not determine that question.—it was repeatedly waived by the filing of motions attacking the jurisdiction of the court on non-jurisdictional grounds, and if it had not theretofore been waived, it was so waived by the filing of the cross-petition praying for judgment. Exchange Trust Co. v. Oklahoma State Bank, 126 Okla.. 193. 259 Pac. 589; Morgan v. Daniels, 130 Okla. 201. 266 Pac. 464.

It is contended that there is no such thing. as the Wagoner Oil & Gas Company, it being

neither a corporation, partnership, nor individual, and that it is not an entity. Such contention is not justified. This trust, acting under this name, brought a suit in the district court of Wagoner county and recovered a judgment, and that judgment was sustained in the Supreme Court in the case of General American Oil Co. v. Wagoner Oil & Gas Co., 118 Okla. 183, 247 Pac. 99. It is now plaintiff in error in this appeal and is asking this court to reverse the judgment of the district court of Wagoner county. It filed in this cause an answer and cross-petition praying judgment in its collective trade or fictitious name. It is also plaintiff in error in another cause pending in this court. Having elected to operate under a fictitious name, it cannot now be heard to say that it cannot be sued under that name. It is not sought in this action to establish any liability against any individual, but only to make the trust estate liable, and that is authorized under the provisions of sections 258 and 8468, C. O. S. 1921.

Under the provisions of chapter 16 of the Session Laws of 1919, such trusts are authorized

"to carry on and conduct any lawful business designated in the instrument of trust, and generally to do any lawful act in relation to such trust property which any individual owning the same absolutely might do."

Among these is to adopt a trade name.

"Without abandoning his real name, a person may adopt any name, style, or signature, wholly different from his own name, by which he may transact business, execute contracts, issue negotiable paper, and sue or be sued" 29 Cyc. 270.

As was said by this court in General American Oil Co. v. Wagoner Oil & Gas Co., supra:

"It necessarily follows that the trustees of an express trust may so do, as they appear to have done, and in so doing, the contract they executed and the suit which is now entered for breach thereof, are, respectively, the contract and the suit of the trustees themselves, made and instituted in their collective trade or business name."

The action of the trial court in sustaining the motion for order nunc pro tunc is erroneous, and the order appointing receiver as corrected nunc pro tunc under date of December 15, 1925, is void. The motion set out that the order sought to be corrected was dated February 20, 1923, and the order so shows. There is nothing in the motion to show any mistake or omission of the clerk or irregularity in obtaining the judgment, and if there was such, the correction could have been made only after notice to the adverse party. The record shows no such notice and the court was without jurisdiction to make this order. Co-Wok-Ochee v. Chapman et al., 76 Okla. 1, 183 Pac. 610; Jones v. Gallagher, 64 Okla. 41, 166 Pac. 204.

This portion of the record, however, is enlightening as it shows that the purchaser of the property recognized the failure of the order appointing receiver to recite the necessary facts to warrant the appointment of a receiver. The order appointing the receiver recited no grounds or reasons showing the necessity for the appointment of a receiver. It was sought by this means to procure an order showing the grounds which were thought necessary to be shown in order to warrant the court in appointing a receiver. The original order found only that a receiver should be appointed. The order nunc pro tunc attempted to find that the trust was insolvent and that it was for the best interest of the creditors that a receiver should be appointed. There was no such allegation in the petition or amendment and no such allegation in the petition for the appointment of a receiver. This question was not before the court on the pleadings at the time the order appointing was made, and a finding of this kind at the date of the order appointing the receiver would have been without the issue presented by the pleadings.

The court cannot, by a nunc pro tunc order, two years after the date of an order, without notice, on motion, on the day the motion is filed, incorporate into an order matters and things not within the issues at the date of the making of the original order, and its attempt so to do is a void act.

"In this jurisdiction, it is provided by statute (section 5268, Rev. Laws 1910) that the proceeding to correct a mistake or omission of the clerk or irregularity in obtaining a judgment or order shall be by motion upon reasonable notice to the adverse party or his attorney in the action." Co-Wok-Ochee v. Chapman et al., supra.

At the date of the order nunc pro tunc the receiver had not executed a deed of conveyance, and this fact is set out in the order nunc pro tunc. This application for order nunc pro tunc called to the attention of the court that in the original order appointing receiver no fact or reason was set forth for the appointment of a receiver and no grounds were set forth therein showing

the necessity therefor. It became the duty of the court to again examine the petition in the case, the amendment thereto, and the application for the appointment of a receiver. He was charged with knowledge of the allegations therein contained. Notwithstanding the defects in the pleadings and notwithstanding the trust had theretofore asked for the vacation of the receivership and the discharge of the receiver. he proceeded to make this void order nunc pro tunc.

This is discussed for the reason that it tends to throw light on the state of mind of the trial judge, which may be considered in construing his acts in order that it may be determined whether or not there was an abuse of discretion.

If the original order of appointment was good, there was no reason for it to be changed. If the original order was not good, the attention of the court being called thereto, it was his duty to set it aside. Notwithstanding this, the trial court attempted by this void order nunc pro tunc to breathe into the order appointing a receiver the breath of life by including therein matters and things not within the issues made up by the pleadings at the time the order appointing receiver was made.

The defects in the order appointing receiver were again called to the attention of the court by the motion of the trust to vacate the receivership and discharge the receiver which was filed on November 3, 1926, and which set forth that the application for the appointment of a receiver did not show sufficient grounds for the appointment of a receiver and that said appointment was not authorized by law.

We will again refer to this in the determination of the question of whether or not there was an abuse of discretion.

Neither B. A. Stephens, intervener, nor H. B. Shefts filed briefs.

The brief of G. F. Waggoner, receiver, presents four contentions. The first of these is that the court had jurisdiction to appoint a receiver in this case. We agree with this contention.

The appointment of a receiver, pendente lite, is to a considerable extent addressed to the sound discretion of the court to which the application is made, to be governed by the consideration of the entire circumstances of the case. The action of the court in appointing a receiver will not be reversed on appeal unless there has been a clear abuse of its discretion. Moran v. Park, 93 Okla. 201, 220 Pac. 589.

As was said by this court in Willard Oil Co. v. Riley et al., 29 Okla. 19, 115 Pac. 1103:

"And hence it is not essential that the legal right of the plaintiff to recover should be beyond controversy in order to vest the court with authority in the exercise of its discretion to appoint a receiver."

In this respect we are concerned only with the question as to whether or not there was an abuse of discretion.

The second is that, whether or not the receiver should have been appointed as a matter of fact, this court cannot review it. We cannot agree with this statement. This court has the power to review in order to determine whether or not there was an abuse of discretion. The evidence taken at the hearing on the application for the appointment of a receiver was not preserved and is not a part of the record. The order appointing receiver finds only "that a receiver should be appointed as hereinafter set out." On that finding and that finding alone the appointment was made. This order must be construed with reference to the petition and amendment in the case and the application for the appointment of a receiver. Under the allegations of the petition, the action was brought for cancellation of the oil and gas mining leases for failure of the trust to bury pipe lines and deliver the royalty oil and by reason of the trust having caused damage to the growing crops and lands of the plaintiffs. The amendment to the petition stated that the trust had never accounted for the royalty oil, but had converted the same to its own uses. The application for the appointment of a receiver alleged, further, that the trust had squandered and dissipated the proceeds of the wells. Under those pleadings the court had jurisdiction to make the order appointing a receiver, but the question of whether or not it should have been made is before this court for review.

The order appointing the receiver was interlocutory:

"Therefore, we conclude that an order appointing a receiver is interlocutory, and may be vacated for cause upon motion filed after the term at which the appointment was made, after such notice to the parties as the court may direct, and that such proceedings need not conform to sections 810 and 812, C. O. S. 1921, providing for verified petition and summons." Exchange Trust Co. v. Oklahoma State Bank, 126 Okla. 193, 259 Pac. 589.

—following the rule in Willard Oil Co. v. Riley et al., supra, wherein it is said:

"The relief involved in the appointment of a receiver is provisional, is not decisive of the ultimate right of either party, nor conclusive of the merits of the action. High on Receiverships, sec. 6."

On the appeal from the final judgment all intermediate orders are brought up under the provisions of section 780, C. O. S. 1921. Wells v. Shriver, 81 Okla. 108, 197 Pac. 460.

This brief quotes the testimony of the district judge, who was called by plaintiffs as a witness and who, without objection having been made, testified as to why he made the appointment of the receiver. He said:

"When we got to that point, it developed that the Wagoner Oil & Gas Company was indebted many thousands of dollars, that it was all run down, and not being operated or pumped properly, and had not for some time. When the receiver took it over it was not under pump. I don't remember how many thousand dollars of debts had been listed, but quite a number, and when I arrived at that conclusion I announced that a receiver would have to be appointed; the company was unable to operate, it was insolvent, and it wou d be for the best interest of everybody to appoint a receiver, the company as well as anybody else." C.-M. 422-423.

If that was any reason for the appointment of a receiver, it was a reason outside of the issues in this case, as shown by the pleadings at the time of the appointment. There had been no allegation of insolvency. The plaintiffs' claim had not been reduced to judgment. There had been no allegation that the property had not been properly operated. If the appointment was made outside the issues in the case, the reason therefor should have been set out in the order appointing. The view we take of the law applicable in this case is that the court had jurisdiction to appoint a receiver, but that the appointment will be reviewed by this court for the purpose of determining whether or not there was an abuse of discretion in making the appointment. If the appointment was based on the facts disclosed by the testimony of the judge, it was outside the issues. It was extrajudicial. It was void. Central Nat. Oil Co. v. Continental Supply Co., 119 Okla. 190, 249 Pac. 347.

We think the trial court had no authority to testify as to the things that prompted him to appoint a receiver. There was no objection, however, to the testimony. We cannot construe this appointment by this kind of evidence and in the absence of the record of the evidence taken at the hearing. We must take the order and construe it with reference to the pleadings. So construed, we find that the court had jurisdiction to appoint the receiver to preserve the property pending the determination of whether or not there had been a forfeiture of the leases as alleged in the petition. The appointment of the receiver was not void.

We are, however, justified in considering this statement of the judge in determining whether or not there was an abuse of discretion in this matter, and we will so consider it.

The third contention in this brief is that this appeal will not lie from the intermediate orders for the reason that it was not filed within the six-months period. This was fully answered in Wells v. Shriver, supra.

It is contrary to the rule that

"An order appointing a receiver is not reviewable in this court until after the final disposition of the case"

—which follows the rule laid down in Hale v. Broe, 18 Okla. 147, 90 Pac. 5.

The cases cited in this brief are not in point. They apply only where the appeal is made directly from the intermediate orders. In the case at bar the appeal was not taken until the final judgment, and is from the final judgment and the intermediate orders.

The fourth contention is that, the receiver having been properly appointed, the court had power to order the property sold.

We agree with that contention, but the action of the court in ordering the property sold was discretionary and is subject to review by this court for the purpose of determining whether or not there was an abuse of the discretion vested in the court, and in order that the proper relief may be granted herein.

The brief of W. O. Rittenhouse, attorney for the receiver, is substantially a repetition of that of G. F. Waggoner, receiver; in fact the Waggoner brief was prepared by W. O. Rittenhouse. We find therein no discussion of any material issues other than those presented in the Waggoner brief.

The brief of the plaintiffs, the principal defendants in error, is confined entirely to the contention that this court had no jurisdiction to review anything other than the judgment for plaintiffs for rent and damages for $350.

This is fully answered in the rule in Wells v. Shriver, supra.

We would have been assisted materially had these briefs discussed certain issues raised in the brief of the trust which we think are material to this hearing.

Those issues, as we have been able to determine them from the voluminous record, the various motions for new trial, and the petition in error, are:

The judgment and decisions are contrary to law and are not sustained by sufficient evidence.

Error in rendering judgment for plaintiffs for $350 damage to the land.

Error in allowing W. O. Rittenhouse $1,250 attorney's fee for his services in representing the receiver.

Error in allowing G. F. Wagoner $1,450 for his services as receiver.

Error in the original appointment of receiver.

Error in the actions of the receiver.

Error in that the sale of the property was void.

Error in that the defendant company was unlawfully divested of its property.

Error in that the agreed judgment of $1,000 was unlawful and void.

Error in that the court erred in taxing the costs, receivership fees and attorneys' fees to the defendant company.

Error in that the court erred in striking defendant company's cross-petition and not permitting the defendant company to prove its offsets and counterclaims.

A judgment and decision under the rule adopted in Oklahoma is not "contrary to law" if it conforms to the pleading and is sustained by the evidence. Mooney et al. v. First State Bank, 48 Okla. 676, 149 Pac. 1173; Bouton v. Carson, 51 Okla. 579, 152 Pac. 131; Moore Company v. Haas, 53 Okla. 817, 158 Pac. 584.

"In an equity case, it is within the power of the Supreme Court to consider the evidence and render judgment thereon, but the rule is well established that the Supreme Court will not interfere with the judgment of the lower court unless the same is clearly against the weight of the evidence. Nowka v. West, 77 Okla. 24, 186 Pac. 220." City of Enid v. Champlin Refining Co., 112 Okla. 168, 240 Pac. 604.

The judgment of the trial court will be sustained unless it is clearly against the weight of the evidence.

"In a case of purely equitable cognizance, the Supreme Court will review the testimony, but will not disturb the findings and judgment of the trial court, unless the same is clearly against the weight of the evidence." Bilby v. Bilby, 133 Okla. 27, 271 Pac. 145.

Measured by this rule the evidence in this case was sufficient to sustain the judgment for $350 as damage to the land. That judgment conforms to the pleading, is supported by the evidence, and is not contrary to law. It should be affirmed.

The agreed judgment for $1,000 was a settlement of other litigation in the same court. It was not in conformity with the pleadings and was not supported by any evidence, but the trust agreed to its rendition and by reason thereof procured a settlement of a pending suit involving some $60,000. As a part of this judgment the court made its order quieting the title of the trust to the leases involved in this action. That judgment was a part of the agreement. It removed the question of forfeiture of the leases from the litigation.

There was left for determination by the trial court only the amount due for royalty oil and for damages to the land. If the court erred in rendering it, the error was invited by the trust. The trust is estopped to assert the invalidity of the $1,000 judgment. Allen v. Oklahoma State Bank, 133 Okla. 14, 270 Pac. 838; Muskogee Electric Traction Co. v. Dunnam, 129 Okla. 70, 263 Pac. 1091. The trust is estopped for the further reason that a party accepting the benefits of a part of a judgment favorable to him cannot maintain an appeal as to another part of a judgment of which he complains. Davis v. Flint, 130 Okla. 110, 265 Pac. 101. The trust, having accepted the benefits of the judgment quieting the title and having failed to appeal therefrom, cannot question the $1,000 agreed judgment. This judgment should be affirmed.

The order appointing the receiver conforms to the pleadings. The evidence is not shown, and in the absence of the evidence this court will not say that that order was contrary to law or not sustained by sufficient evidence. Roy L. Bopst Roofing Co. v. Salem Trading & Finance Co., 115 Okla. 283, 242 Pac. 1044. However, the trust filed a motion to vacate the receivership and discharge the receiver. That motion was directed at the agreed judgment as well as at the receivership. Authority of the receiver

had then been extended by the agreed judgment over all the property of the trust. The title to the premises had been quieted by that judgment in the trust. There had been no sale of any property at that time. That motion was filed on March 13, 1925. It was overruled on May 29, 1925. This property was sold on July 9, 1925, and the sale was confirmed over the objection of the trust.

The court, having jurisdiction of the subject-matter, had the jurisdiction to overrule the motion to vacate the receivership and discharge the receiver; it had the jurisdiction to order the sale of the property and it had the jurisdiction to overrule the objections of the trust and to confirm the sale. These are matters which, being within the discretion of the court, are reviewable here on appeal only to determine whether the trial court abused its discretion.

This brings us to a consideration of the entire record as to the receivership.

Neither the petition nor the amendment to the petition alleged that the plaintiff had no adequate remedy at law; neither contained an offer to do equity; neither contained an allegation of insolvency, and neither was verified. The allegations were that the land of the plaintiffs had been damaged by the trust, and that the trust owed for the royalty oil.

A receiver was not sought for the production alone, but for the entire property and the operation thereof. There was no allegation that the property was not properly operated or that there was danger of loss from negligent operation. The claim was for royalty oil and damages. This presents a question: Is the failure to bury pipe lines, deliver royalty oil, or pay for damage to the land from overflow, ground for forfeiture of an oil and gas mining lease?

"A failure to pay royalty under the lease will not give the lessors sufficient grounds to declare a forfeiture unless by the express terms of the lease they are given that right and power." Thornton on Oil & Gas (1925) page 587, and a long list of cases cited therein.

No implied covenants are involved in the issues made by these pleadings. They are express covenants.

"The parties being deemed capable of expressing such contract as they desire to enter into, it is not the province of the courts, through the doctrine of implied covenants, to make a contract for them, but to effec-

tuate the purpose of the contract they actually made. It is, therefore, apparent that there is no scope for the operation of an implied covenant with respect to any of the terms of the contract, concerning which they have expressly stipulated." Mills' Law of Oil and Gas, sec. 104.

These covenants, being expressed, have no greater force than that expressed therein. The lease does not provide for forfeiture for breach of these covenants. Damages for conversion of oil or replevin are adequate remedies.

"Forfeiture of an oil and gas lease after development and discovery of oil for failure to operate is a harsh and severe remedy, and should only be declared where the same is more consonant with the principles of right and justice than to withhold such equitable relief." Strange et al. v. Hicks et al., 78 Okla. 1, 188 Pac. 347.

We are not concerned with this question of forfeiture other than as it shows abuse of discretion of the court, for on the final trial the court found and held the issues as to the amount due for royalty oil in favor of the trust.

The lease in this case did not provide for a forfeiture. The injuries claimed are similar in their nature, and the amount thereof could be recovered in an action of law. In this case in the final trial a judgment was rendered for that damage in the sum of $350. In the final trial in this case a judgment was rendered that the trust owed nothing for royalty oil. There were then no grounds for forfeiture of the lease and none for the receivership.

The petition for the appointment of the receiver alleged a conversion of the royalty oil and that unless a receiver was appointed to take charge of the property and operate the same under the orders of the court the plaintiffs would be irreparably damaged. It did not charge that the trust was not properly operating the leases or that any of the oil was being permitted to waste. However, the court had a right to consider this an equitable plea and had the discretion to appoint a receiver. Thereafter, however, and at the time of the agreed judgment, this court made an order quieting the title to these premises and reserving for consideration only the damage to the land and the amount due for royalty oil. From that moment on this court was charged with knowledge that there was no issue between the plaintiffs and the trust except the amount that the trust might owe the plaintiffs for royalty oil and for damages. For neither of these would the plaintiffs be entitled to

a receiver. So that on the 13th day of March, 1925, at the time of the presentment of the motion to vacate the receivership and discharge the receiver, the court must have known that there was no lawful reason for the continuance of the receivership. This is confirmed by the record where at the time of the trial of the main case the court announced:

"Let the record show that the only issue before the court, and under consideration at this time, is whether or not any damage has been suffered by Mr. Marlow to the surface of his land, and how much is due for royalty, if anything."

The title had been quieted. The court had held that the trust was in possession and had quieted the title on March 29, 1923.

To review the evidence in this case would be to make it unnecessarily long. Suffice it to say that an examination of the record discloses that there was an abuse of discretion by the trial court in refusing to vacate the receivership and discharge the receiver.

If there was ever any reason for the appointment of a receiver in this case, it was a receiver for only the production from the property, with authority to hire, audit, allow, and pay all necessary expenses in operating the property. Willard Oil Company v. Riley et al., 29 Okla. 19, 115 Pac. 1103. By this order the court changed the possession of the property from that of the trust to a receiver, and the extension order gave this receiver possession of all of the property of the trust, even its office furniture. The distinction is well pointed out in Hughes et al. v. Garrelts et al., 35 Okla. 321, 129 Pac. 43, wherein the court said:

"As we have seen, this application does not contemplate the change of the status of the realty itself. On the contrary, it is conceded by the bill that those who are operating the property as lessees should not be disturbed in their operations. If this motion contemplated the change of the possession of this property, it would involve a far different question than the one involved in the issue upon this motion. Numerous and various authorities have been cited by the defendants to show that the courts of equity will not entertain a motion to disturb the possession of a property pending a litigation in an action of ejectment; but such is not the motion in this case, and I do not see any valid reasons for refusing the motion asked for. There appears to be no desire upon the part of the plaintiffs to this action to interfere with the possession of the lessees of the property, but only, as I have said, to bring into the custody of the court the rents, issues and profits of it, that they be husbanded and held to answer the judgment at the end of the litigation of the action at law."

There the court concluded that it was proper and right to hold the proceeds. But here the court, after rendering a judgment quieting the title to this property in the trust, proceeded, before judgment, to sell, not only the leasehold and the appurtenances thereto and the property thereon, but other property in nowise connected with it. 1 Tardy's Smith on Receivers (1920) p. 29, states the rule to be as follows:

"* * * In order to show cause for the appointment of a receiver, the petitioner must show either a clear legal right in himself to the property in controversy, that he has some lien upon it, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand, and it must appear that possession of the property was obtained by defendant through fraud, or that the property or income from it is in danger of loss from the neglect, waste, or misconduct of defendant, and applicant must have a present, existing interest in the property over which he seeks to have the receiver appointed.

"As was said by the Supreme Court of Georgia, in discussing this subject: 'The high prerogative act of taking property out of the hands of one, and putting it in pound under the order of a judge, ought not to be taken, except to prevent manifest wrong, imminently impending.' "

The petition for the sale, as a reason for the sale, recites that the property could not be operated so as to pay the operating expenses and pay the indebtedness of the trust without operating over a period of several years; that the market was good and that the receiver thought the time opportune to sell it. On the day that petition was filed, without any notice to anyone, the court ordered the property sold for the reason that he thought it was for the best interest of the creditors. There were no creditors parties to this litigation, except the plaintiffs, whose claim was unliquidated and whose claim was thereafter adjudged to be $350. There is nothing in the order of sale to indicate any hearing had on the application. This court said in Scott v. Price et al., 103 Okla. 150, 229 Pac. 618:

"The record discloses, also, that there was little or no market for this production in its crude state as it came from the well, and there could, therefore, be little foundation for the fear that the defendant could or would fraudulently market and dispose of the mineral during the pendency of the action and convert the proceeds to his own

use; nor could there be in the nature of things any great danger of the mineral in place in the earth being exhausted by drainage through operation on adjoining lands during the short time that would elapse until there could be a trial and determination of the issues presented by the petition on the merits. In these circumstances we do not think the court justified in resorting to the extraordinary remedy of a receivership. Whatever may be the ultimate rights of the parties in view of the extraordinary and unusual situation presented under the facts in the case, no good purpose can be subserved by the appointment of a receiver.

"The rule applicable to cases of this kind is announced very clearly, we think, in Folk, v. U. S., 233 Fed. 177, where it is said in the opinion by Mr. Justice Sanborn:

"'A court of equity is not without jurisdiction to appoint a receiver of real estate and of its proceeds in the possession of a defendant holding under a title regular on its face. But the cases in which it may exercise that power before a trial of the issues on the merits without a departure from the established principles and practice of equity jurisprudence are exceptions to the general rule, and clear proof of the following necessary facts is indispensable to bring such a case within the exceptions:

"'First. The fact that there is imminent danger that unless a receiver is appointed the property or its proceeds will be deteriorated in value or wasted during the pendency of the suit. Second. The fact that the plaintiff will suffer irreparable loss from such deterioration or waste. But if the defendant is solvent and abundantly able to respond to any such loss, or if he will give good bond so to respond, the loss can rarely be irreparable, and general rule is that a receiver should not be appointed. Third. The fact that on the pleadings and preliminary proofs there is a strong probability that the plaintiff will ultimately prevail on the merits.

"'But courts of equity are extremely averse to any interference with the possession of a defendant claiming real estate under a legal title. They proceed in such a case with extreme caution and rarely interfere. If it seems doubtful whether or not the plaintiff will recover at the final hearing, or whether or not there is imminent danger that the plaintiff will suffer irreparable loss, the application for a receiver will be denied and in the hearing and decision of such a case all the presumptions are in favor of the defendant in possession under a legal title'."

To the same effect see Ward v. Interocean Oil & Gas Co., 52 Okla. 490, 153 Pac. 115, wherein the court said:

"When the court came to consider the question of a receivership, it then became its duty to (1) inquire whether, from the information before it, plaintiff appeared to have a valid interest in the property involved; and (2) if so, whether the property was being used in such a way as to probably result in irreparable loss to plaintiff, in case he should finally prevail, or whether or not a receiver, if appointed, could preserve the property during the pendency of the litigation, so as to deliver it to the successful party at the end thereof, better and more surely than to leave it in the hands of the defendant."

At the time of the order of sale the court must have considered the question of the receivership, and it was a matter of record at that time that that same court had rendered a judgment holding that the plaintiffs had no interest in the leases involved except only the right to receive their royalty.

The danger of a sale prior to judgment is discussed by this court in Lawton Mill & Elevator Co. v. F. & M. Bank, 65 Okla. 230, 164 Pac. 670, wherein the court said:

"In perhaps the majority of cases continuing depreciation of the mortgaged property can be shown; some decrease of the corpus available to pay the debt, through charges of maintenance, repairs, receiver's fees, etc., can be established. If upon these grounds alone receivers are to be authorized to sell in advance of a decree of foreclosure, then our whole statutory process for foreclosure may as well be abolished. By such a rule a homestead, mortgaged by the husband without the wife's consent, might be sold and the homestead right made into a mere nothing, before the wife was made a party or had an opportunity to assert her rights. True, she might afterward claim the proceeds, but the sale would stand (Burlington Ry. Co. v. Simmons, 123 U. S. 52, 8 Sup. Ct. 58, 31 L. Ed. 73); and money would not restore the home or preserve the right to real property, which since our earliest times has been held next to sacred. Again, by such a sale the six-month redemption period given in an appraisement waived mortgage could be absolutely destroyed. These and many other considerations lead us to deny to trial courts the right to exercise this power of sale upon any ordinary grounds."

This is the general rule:

"Whenever the reason or necessity for a receiver ceases to exist the property should be discharged from the receivership, although the mere coming into existence of this state of things does not ipso facto discharge the receiver." 34 Cyc. 171.

"The receiver's functions, however, cease inter parties, upon the entry of a judgment in favor of the party against whom the receiver was appointed, although he is not discharged without an order." 34 Cyc. 171.

"As in judicial sales generally, the reversal or vacation for irregularity or error in the decree under which the sale was made will not invalidate the title of the purchaser, no question of jurisdiction of the court being involved." 34 Cyc. 336; Threadgill v. Colcord, 16 Okla. 447, 85 Pac. 703.

Mr. Justice Branson, in Gypsy Oil Co. v. Schonwald, 107 Okla. 253, 231 Pac. 864, in the second paragraph of the syllabus said:

"In determining whether or not a receiver should be appointed to take charge of property or any part thereof involved in litigation, the court not only has the right, but should consider the petition filed by the plaintiff, to determine whether or not the same pleads a cause of action in favor of the plaintiff seeking to have the receiver appointed, and this is in furtherance of a determination as to whether or not there exists a probability that the relief sought may ultimately be obtained by a judgment based on the petition in the action. If the petition fails to state a cause of action for relief against a party, a receiver should not be appointed so as to in any wise affect the party to the action against whom the petition fails to plead a right to relief."

In considering that discretion the court should consider the purpose of this receivership. It was not to see that the oil went to the one who was entitled thereto. For this purpose a receiver could properly have been appointed. As was said by this court in Hughes et al. v. Garrelts et al., supra:

"The purpose of this proceeding is not to deprive the defendants of either the possession of the land or of the right to continue operation, but it is its purpose to see to it that the oil and gas produced goes to the one who is entitled thereto, and not those who are not entitled to it, and this cannot be determined until the final trial of the main action. That it is proper and right to thus hold the proceeds we think there can be no doubt. It will bring no substantial harm to any one and will be absolutely conducive to justice to all."

But its purpose was to obtain a receiver of the entire property of this trust and the operation of that property in order that the plaintiffs might collect their claim for damages.

We must conclude that the court abused its discretion in ordering the sale of the property and that the trust was unlawfully divested of its property.

However, that does not make the same void. This rule was adopted in Oklahoma and is the general rule. This court exercised its discretion in ordering a sale of this property. That there was an abuse of the discretion does not vitiate the sale. The trust had a right to appeal from the intermediate orders in this case (Exchange Trust Co. v. Oklahoma State Bank, supra), and should have done so if it desired to prevent this sale or the confirmation thereof. It elected, however, to stand on its exceptions and to bring the entire record to this court on one appeal. It had a right to do that. Wells v. Shiver, supra.

The trial court, with its attention called to the failure of plaintiffs to make the allegations necessary to the appointment of a receiver, refused to vacate the order, but, without notice, ordered a sale of the property two years before judgment. That sale was confirmed over objection. At the time the sale was made the court had rendered a judgment which precluded the plaintiffs from any relief through a receivership. The record shows nothing from which this court can conclude that the trial court was justified either in ordering or confirming the sale.

The Oklahoma rule with reference to discretional sales was announced in Threadgill v. Colcord, 16 Okla. 447, 85 Pac. 703, and with the citations of authority in support thereof is as follows:

"A purchaser, under a deed from a receiver, is not bound to examine all the proceedings in the case in which the receiver is appointed. It is sufficient for him to see that there is a suit in equity, or was one, in which the court appointed a receiver of property, that such receiver was authorized by the court to sell the property, that a sale was made under such authority, that the sale was confirmed by the court, and that the deed given by the receiver accurately recites the property interests thus sold. A purchaser at a judicial sale is not bound to inquire whether any errors intervened in the action of the court, or irregularities were committed by the receiver in the sale. Koontz v. Northern Bank, 83 U. S. (16 Wall.) 196, 21 L. Ed. 465; Grignon's Lessee v. Astor, 43 U. S. (2 How.) 319, 11 L. Ed. 283; Voorhees v. Bank of U. S., 10 Pet. 499, 9 L. Ed. 490.

"Even though the case in which the receiver was appointed might be subsequently reversed on appeal, such reversal would not affect the sale if the court had jurisdiction to render the decree, and the fact that the plaintiff in the suit in which the receiver was appointed was himself the purchaser at the receiver's sale, would not alter the case."

The sale was not void.

We have examined the record as to the actions of the receiver, and while there are some things in the proceedings of the receiver that might be criticized, in view of

the amount of work involved and the amount of money handled and the results attained, we think there was no reversible error in his actions. He did only the things that the court ordered him to do. He is not responsible for the acts of the plaintiffs or the orders of the court. His acts and his report should be confirmed, and that portion of the judgment to that effect should be affirmed.

We have examined the record with reference to the $1,450 allowed the receiver and the $1,250 allowed to his attorney. We find these allowances to be based upon evidence, and as shown by the evidence, they are not excessive. We find no error in the allowance of either the receiver's fee or the fee allowed the attorney for the receiver. These allowances should stand. In this respect the trial court should be affirmed.

In view of our consideration of the evidence as a whole and the record as shown and our conclusion as to the abuse of discretion, we are of the opinion that there was error in the taxing of the costs, receiver's fees, and attorney's fees to the trust. The trust, as determined by the final outcome of this litigation, owed the plaintiffs $350, and there is no reason or justification in this trust being charged with the entire costs of this case, including a receiver's fee and an attorney's fee for the receiver. Section 773, C. O. S. 1921. The trial court should ascertain what portion of the costs herein would be properly chargeable to the trust in an action against it by these plaintiffs for recovery for injury to the land in question. After determining that amount, the trust should be charged therewith. The trust should be charged with the costs of the receivership up to March 13, 1925, the date of filing of the motion to discharge the receiver and vacate the receivership. The costs of the receivership thereafter, including the costs of the sale, should be charged to the plaintiffs. The trial court should divide the receiver's fee and the fee to the attorney for the receiver on such basis as will apportion those fees to the plaintiffs and the trust in accordance with the services of the receiver and his attorney prior to the filing of said motion and their services after that date. These fees, when so apportioned, should be taxed as costs in the case.

The trial court should make proper adjustment of the receiver's expenses, charging the trust with such portion thereof as are found on hearing of that issue to have been necessary for the operation of the leases and the preservation of the property. as de-

fined in the quotation from 34 Cyc. 369. All other expenses should be charged to the plaintiffs. This rule is announced in 34 Cyc. 364, as follows:

"Receivership expenses, in the absence of statute, should, in all cases, as between the parties, be adjusted upon equitable principles."

And 34 Cyc. 368:

"* * * Nor should a defendant in a receivership proceeding have its property taken to pay the expenses of a receiver unlawfully and unjustly kept in office as an officer of the court when justice requires his discharge."

In 34 Cyc. 369, it is said:

"So it is said that the expenses incurred by the receiver, which defendant would necessarily have incurred had not a receiver been appointed, should be paid out of the fund, but such as would not have been incurred in such case. should be charged to the parties procuring the appointment."

The cases cited in this text support this rule. This rule is announced and followed by this court.

The last assignment of error is that the court erred in striking the defendant's crosspetition. An examination of this record discloses that this entire litigation grew out of the refusal of the plaintiffs to sign a division order on the oil. This property was wildcat property. There was no pipe line into that field. Oil was discovered and the trust constructed a pipe line to the nearest railroad and bought a loading rack and prepared to ship the oil. It made a contract for the sale of part of the oil, and the plaintiffs as lessors demanded a bonus before they would sign a division order. After that contract was fulfilled the plaintiffs continued to refuse to sign a division order. They failed to provide storage for their oil. They were requested to sign a division order, and they answered by saying that their lawyer had told them they did not have to sign an order, and they were not going to do so. They never did sign an order. Thereafter. and when the trust had delivered a part of the oil, these plaintiffs brought this suit and alleged conversion by the trust of their oil. This record discloses that that action was malicious. Had plaintiffs signed a division order or made arrangements to handle their oil, there would have been no occasion for this litigation. Their wrongful conduct occasioned the expense and caused the damage, if any. In this suit they asked for a receiver on insufficient and fraudulent grounds, and on

their request a receiver was appointed. The receiver took charge of the property and operated it. The record discloses that when these wells were shut down it required some time to bring back the production. This resulted in a loss. This trust, with the permission of the court, filed its amended answer and cross-petition alleging facts, which if true, entitled it to recover. The plaintiffs filed a demurrer. That demurrer, under the rules of this court, admitted those facts, but the trial court, in the further abuse of his discretion, considered the demurrer as a motion to strike, which he had no authority to do, and struck that answer and cross-petition from the files. That action was erroneous. Mr. Justice Kane, in K. C. Oil Co. v. Harvester Oil & Gas Co., 80 Okla. 61, 194 Pac. 228, in discussing a similar question, said:

"Persons who wrongfully procure the appointment of a receiver become, after the appointment is judicially declared void, trespassers ab initio, and liable for the damages caused by their wrongful acts. It is not necessary, in order to recover damages for wrongfullly procuring the appointment of a receiver, to show that the appointment was procured maliciously, and without probable cause. In an action for damages for wrongfully securing the appointment of a receiver, the general rules as to burden of proof and admissibility of evidence in civil actions apply. Plaintiff is entitled to all damages which he may sustain by reason of such appointment, and in determining the measure of damages, it is proper to consider the injury to plaintiff's possession during the period of the receivership, the amount of good and collectable accounts lost by reason of the receivership, and the value of the services of counsel employed to procure the vacation of the order appointing the receiver.

"Under this rule the proposition of whether or not the property was in the hands of the plaintiff or the receiver or some other person is not material where it is shown that the entire receivership was wrongful. The gist of the action is the damages sustained by the defendant through such wrongful receivership."

This was the rule announced in Walton et al. v. Williams et al., 5 Okla. 642, 49 Pac. 1022, and in Anderson v. Marietta Nat. Bank et al., 93 Okla. 241, 220 Pac. 883, this rule was applied.

The order striking the answer and cross-petition was erroneous. It should be reversed and the cross-petition reinstated and tried.

We hold that the plaintiffs wrongfully obtained the appointment of this receiver and that they are trespassers ab initio and liable for the damages caused by their wrongful acts, and such damages to be determined under the rule announced in K. C. Oil Co. v. Harvester Oil & Gas Co., supra, after proper trial in this action.

The receiver should be discharged. He should account to the court as soon as practicable, and his account should be audited by the court. He should be given credit in that account for all sums he has paid out under order of court, including such sums as have been paid. out by him under order of court and herein ordered charged to the plaintiffs. When that audit is completed, the trial court should retax the costs and should render judgment against plaintiffs for such amounts as are chargeable to them as herein provided.

LESTER, V. C. J., and CLARK, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.

MASON, C. J., absent and HUNT, J., not participating.

Note.—See under (5) 23 R. C. L. pp. 10, 12; 3 R. C. L. Supp. p. 1308; 4 R. C. L. Supp. p. 1488; 5 R. C. L. Supp. p. 1228. (10) 6 R. C. L. p. 626. (15, 16) anno. 25 L. R. A. (N. S.) 413; 23 R. C. L. p. 106; 4 R. C. L. Supp. p. 1494; 5 R. C. L. Supp. p. 1232; 6 R. C. L. Supp. p. 1364. See "Appeal and Error," 3 C. J. §412, p. 575, n. 65; 4 C. J. §2582, p. 680, n. 52. "Contracts," 13 C. J. §485, p. 525, n. 37. "Equity," 21 C. J. §39, p. 62, n. 57. "Judicial Sales" 35 C. J. §127, p. 82, n. 76. "Mines and Minerals," 40 C. J. §694, p. 1076, n. 51; §698, p. 1080, n. 4. "Receivers," 34 Cyc. p. 19, n. 31; p. 36, n. 2; p. 138, n. 72; p. 158, n. 98; p. 171, n. 60, 61; p. 335, n. 27; p. 336, n. 29; p. 364, n. 34; p. 369, n. 59; p. 511, n. 12, 14; p. 512, n. 17, 18.